UNITED STATES of America, Plaintiff,

v.

**David ISLIP; Gerald Brown; Streamflo Strainers, Inc.; Great Lakes Customhouse Brokerage, Inc.; Washington International Insurance Company; and International Cargo and Surety Insurance Company, Defendants.**

Slip Op. 98–125.
Court No. 97–02–00357.

United States Court of
International Trade.

Aug. 26, 1998.

**1050**

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; A. David Lafer, Assistant Director; John J. Hoffman, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for Plaintiff.

Joel Daniels, for Defendants David Islip and Streamflo Strainers, Inc.

Sidney N. Weiss, (Al J. Daniel, Jr.), New York City, for Defendant Gerald Brown.

Fitch, King & Caffentzis, (James Caffentzis), New York City, for Defendant Great Lakes Customhouse Brokerage, Inc.

Sandler, Travis & Rosenberg, P.A., (Kenneth N. Wolf), Washington, DC, for Defendant Washington Intern. Ins. Co.

Hodes & Pilon, (Wayne Jarvis), Chicago, IL, for Defendant Intern. Cargo and Surety Ins. Co.

## OPINION

WALLACH, Judge.

### I

### SUMMARY

The United States Customs Service ("Customs") commenced this action on February 28, 1997, against Gerald Brown ("Brown") and others to recover civil penalties for violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1988), alleging fraudulent, grossly negligent, and negligent conduct concerning exportation of strainers, pump connectors, and check valves from Canada into the United States. This matter is before the Court on Defendant Brown's Motion to Quash Service of Process

and Dismiss for Lack of Personal Jurisdiction, Failure to Plead Fraud with Particularity, Failure to State Claims under 19 U.S.C. § 1592, and to Dismiss Time-barred Claims ("Motion to Dismiss" or "Motion"). The other defendant's have not joined in his Motion. This Court has jurisdiction pursuant to 28 U.S.C. § 1582 (1994).

Brown's Motion is based on allegations that (1) personal service upon him of a Summons and Complaint by Customs Canada agents did not comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention" or "Convention"), and that the Proof of Service filed with the Court is not legally adequate; (2) he did not have "minimum contacts" with the United States sufficient to allow this Court to exercise personal jurisdiction over him; (3) the Government's Complaint did not plead fraud with particularity, as required by USCIT Rule 9(b); (4) he was not given sufficient time to respond to a prepenalty notice; and (5) the statute of limitations bars the Government's Complaint on those claims based on gross or simple negligence which accrued more than five years prior to his first waiver of the limitations period.

For the reasons that follow, the Motion is denied as to Defendant's first four arguments, and is granted as to the fifth.

First, Defendant waived his defense of insufficiency of service of process by not including it in his first responsive pleading. Moreover, had the defense not been waived, service would still be upheld because it complied with Articles 10(b) and 10(c) of the Hague Service Convention and because the two declarations of service filed with the Court satisfactorily demonstrate that the Summons and Complaint were delivered to Defendant. They also comply with the requirements of 28 U.S.C. § 1746 for declarations in lieu of affidavits executed abroad.

Second, this Court may exercise personal jurisdiction over Defendant because the acts which he is alleged to have committed constitute "purposeful," "minimum contacts" with the United States, and the exercise of juris-

diction comports with "traditional notions of fair play and substantial justice."

Third, the Government's Complaint pleads fraud with sufficient particularity under CIT Rule 9(b). The Complaint specified the "time, place, and contents" of the alleged false representations.

Fourth, Defendant was, pursuant to 19 C.F.R. § 162.78(a), entitled to receive thirty, rather than seven, days to respond to his prepenalty notice. That shortened response time, however, did not deprive Defendant of due process at the administrative level. No harm accordingly, in this situation, means no foul.

Defendant is correct in his statute of limitations argument. The Government's claims that are based upon grossly negligent or negligent acts which occurred more than five years before Defendant signed his first waiver of the statute of limitations are time-barred. Defendant signed a waiver of the statute of limitations on August 10, 1993, which expressly excluded any claims that were already barred at the time the waiver became effective. Since, under 19 U.S.C. § 1621, the limitations period for grossly negligent and negligent violations of 19 U.S.C. § 1592 is five years, the Government's claims that are based upon grossly negligent or negligent acts which occurred more than five years before August 10, 1993, are time-barred.

## II

### STANDARD FOR DETERMINATION

■ In the context of a motion to dismiss, the Court assumes that "all well-pled factual allegations are true," construing "all reasonable inferences in favor of the nonmovant." *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). *See also United States v. KAB Trade Co.,* No. 96–06–01635, 1997 WL 155397(CIT) (motion to dismiss based on lack of personal jurisdiction, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted); *United States v. Jac Natori Co.,* 17 CIT 348, 821 F.Supp. 1514 (1993) (motion to dismiss alleging, *inter alia,* failure to plead fraud with particularity and failure to comply

with the statute of limitations). Thus, "to the extent that factual questions are raised and are material to the result, dismissal is improper unless there is no reasonable view of the facts which could support the claim." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993).

■ To determine the sufficiency of a motion to dismiss for failure to state a claim upon which relief can be granted (USCIT R. 12(b)(5)), consideration is limited to the facts stated on the face of the complaint, documents appended to the complaint and documents incorporated in the complaint by reference. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In contrast, when other defenses are asserted under US-CIT R. 12(b) (as under the corresponding Federal Rules), the Court may review evidence extrinsic to the pleadings. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1364, at 468–69 (2d ed.1990). *See, e.g., Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist."); *Marsden v. Federal B.O.P.,* 856 F.Supp. 832, 835 (S.D.N.Y. 1994) ("On a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, or insufficiency of service of process, consideration of matters outside the pleadings is permissible.")

Under these standards, the facts of this case are the following:

## III

### PERTINENT FACTS

As alleged in the Government's Complaint of February 28, 1997, Streamflo Strainers, Inc. ("Streamflo") is, and at all times relevant to this action was, a Canadian corporation located in Ontario, Canada. Compl. at ¶ 5. Brown was at all times relevant to this action General Manager of Streamflo and a resident of Canada. Compl. at ¶ 4. Customs alleges that on or about October 30, 1992, it discovered that Streamflo had submitted false

statements and documents at the port of Buffalo, in violation of 19 U.S.C. § 1592. Compl. at ¶ 23, ¶ 24.

On March 15, 1993, Customs issued a pre-penalty notice to Brown, stating that Brown had ordered his employees to falsely mark merchandise in Canada prior to importation into the United States; that he ordered employees to remove country of origin markings from merchandise which had already entered into the United States; and that he ordered employees to make false statements on entry documents regarding the country of origin and material of composition of merchandise imported into the United States. Defendant's Exhibit 2. The notice indicated a tentative culpability level of fraud, with a corresponding penalty of $ 6,674,462.50. *Id.*

The prepenalty notice stated that Brown had seven days from the date of the mailing of the notice to make a written and/or oral presentation as to why a claim for monetary penalty in the amount proposed should not be issued. *Id.* On March 19, 1993, Defendant mailed a written response to the prepenalty notice to Customs. Plaintiff's Exhibit I.

An amended penalty notice was issued to Defendant on April 5, 1993, assessing a penalty in the amount of $5,627,346.86. *See* Compl. at ¶ 25.[1] Brown sent a petition and amended petition seeking mitigation of the penalty to Customs on April 15, 1993; April 21, 1993; and July 13, 1993. *See* Plaintiff's Exhibit J.[2]

On July 26, 1993, Customs responded to Brown's petitions for mitigation.[3] Brown

was told that he could file a supplemental petition.[4]

Brown signed a waiver of the statute of limitations on August 6, 1993, to be effective through August 10, 1995. Defendant's Exhibit 3. On August 9, 1993, Brown requested a sixty day extension to file a supplemental petition protesting the proposed penalty. Plaintiff's Exhibit K. On August 13, 1993, Customs granted Brown's request, extending his supplemental petitioning period until October 11, 1993. Plaintiff's Exhibit L.

On October 6, 1993, Customs extended Brown's time to submit a supplemental petition to March 10, 1995 or to 30 days following resolution of the criminal proceedings in which Defendant was involved. Plaintiff's Exhibit M.

Customs sent Brown a notice on May 5, 1995, advising him that if he did not sign another waiver of the statute of limitations, his case would be referred to the Department of Justice for litigation. Plaintiff's Exhibit N. On July 28, 1995, Brown executed a waiver made for the period of two years commencing from August 10, 1995, and extending through August 10, 1997. Defendant's Exhibit 3. Customs accepted the waiver on August 4, 1995. *Id.*

On February 28, 1997, Plaintiff initiated its action against Brown.

In a letter dated June 11, 1997, Jeremiah J. Sullivan, Special Agent in Charge, U.S. Customs Service, Buffalo, New York, requested that the office of Investigator Dana Andrews, Acting Manager, Canada Customs Investigations, Hamilton Region, serve sum-

---

1. The penalty notice itself is not included in the record; in addition, the record does not indicate what was being amended by the April 5 "amended penalty notice."

2. No such petitions are included in the record; the only mention of them is in a letter dated July 26, 1993, signed by the Director of the International Trade Compliance Division of the U.S. Customs Service and addressed to the District Director of Customs in Buffalo, New York. Plaintiff's Exhibit J.

3. Defendant's petition seeking mitigation of the proposed penalty is not included in the record, nor is Customs' response to Brown. Plaintiff's Exhibit J, a letter from the International Trade

Compliance Division of the U.S. Customs Service to the District Director of Customs in Buffalo, New York, makes reference to Defendant's petition and addresses in detail the allegations it purportedly makes. In the letter, the writer orders the Buffalo office to quickly provide Brown's counsel with a copy of its decision; while the Plaintiff's Response to Defendant's Motion ("Plaintiff's Response") suggests that it was provided to Brown, no documentation contained in the record supports that claim. *See* Plaintiff's Response at 37.

4. Plaintiff's Response contends Defendant was informed of his right to file a supplemental petition in its copy of the Customs decision of April 5, 1993. *See* Plaintiff's Response at 37.

mons on Brown and Streamflo, care of Brown. Plaintiff's Exhibit A.

On June 18, 1997, Brown was personally served with the Summons and Complaint in this case in Burlington, Ontario, Canada, by a "Canada Customs Investigator" named Mark Leonard ("Leonard"). Defendant's Exhibit 1; Plaintiff's Exhibit B. Leonard executed a "declaration of service" on June 18, 1997, Defendant's Exhibit 1, and another on January 13, 1998, Plaintiff's Exhibit B.[5]

Defendant filed his Answer on August 25, 1997. In the Answer, Defendant lists as his fifth affirmative defense that, "[t]his Court lacks personal jurisdiction over defendant."

On December 15, 1997, Defendant filed his Motion to Quash Service of Process and Dismiss for Lack of Personal Jurisdiction, Failure to Plead Fraud with Particularity, Failure to State a Claim Under 19 U.S.C. § 1592, and to Dismiss Time–Barred Claims.

## IV

## DISCUSSION

### A

**Defendant Waived His Defense of Insufficiency of Service of Process by Failing to Raise it in His First Responsive Pleading**

█ The Supreme Court has observed that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). To avoid waiving that right through implication, defendants once had to contest personal jurisdiction through a special appearance. Fed.R.Civ.P. 12 eliminated the need to plead specially in federal court. Rule 12(b) provides that "[n]o defense or

objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." [6]

It is, however, essential that a defendant raise the defenses of lack of jurisdiction over the person, insufficiency of process and insufficiency of service of process in his or her first motion or responsive pleading. USCIT R. 12(g) and 12(h)(1), and corresponding Fed. R.Civ.P. 12(g) and 12(h)(1), provide that those defenses are waived unless they are asserted in the defendant's first defensive paper, whether that be a pre-answer Rule 12 motion or an answer or an amendment thereof permitted as a matter of course. Courts have interpreted this provision strictly. *See Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 733 (7th Cir.1991) (waiver may be found as a result of a failure to raise the defense in the defendant's first pleading); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir.1983) (defendant wishing to raise a Rule 12(h)(1) defense must do so in its first defensive move).

In Brown's first responsive pleading, he asserts: "[t]he Court lacks personal jurisdiction over defendant." Answer at 3. In his Motion to Quash Service of Process and Dismiss for Lack of Personal Jurisdiction, Brown argues lack of personal jurisdiction and insufficiency of service of process. By objecting to the exercise of personal jurisdiction in his Answer, did Defendant preserve the right to raise an objection to service of process in his Motion?

█ The defenses of "lack of jurisdiction over the person" and "insufficiency of service of process" are separately numbered in US-CIT R. 12. *See,* USCIT R. 12(b)(2), (4). If possible, a statute must "be construed in such a fashion that every word has some operative effect." *United States v. Nordic*

---

5. In the June 18, 1997 declaration, Leonard declares "under penalty of perjury" that he personally served Brown. Defendant's Exhibit 1. In the January 13, 1998 declaration, Leonard adds that he was thirty-five years old at the time of the service; that he is, under the laws of Canada and Ontario, a person competent to personally serve such process upon an individual; and that he served Brown in the city of Burlington, Ontario, Canada. Plaintiff's Exhibit B.

6. The objective of the Rule is to eliminate unnecessary delay at the pleading stage by requiring the defendant to advance up-front every available Rule 12 defense and objection he or she may have that is assertable by motion. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1384, at 726 (2d ed.1990).

*Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). There would be no reason to separately list insufficient service if the defense of lack of personal jurisdiction subsumed both of them.

The majority of courts have held that the two defenses must be raised separately in the first responsive pleading. In *Roque v. United States,* 857 F.2d 20, 22 (1st Cir.1988), the First Circuit held that "[i]f the true objection is insufficient service of process, we do not think it is too much to require a litigant to plainly say so. The [defendant] should not couch its true objections to the sufficiency of service in the garb or formalistic incantations of lack of personal jurisdiction. . . ."

Similarly, the court in *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.,* 775 F.Supp. 133, 137 (S.D.N.Y.1991), examined the language of Rule 12(b) and determined that there is no implication "that any one of the listed defenses may be raised or preserved by raising one of the other listed defenses." In that case, just as in this case, one of the defendants' affirmative defenses stated, "[t]his court does not have personal jurisdiction over [the] defendants. . . ." *Id.* The *Federal Home* Court held that such language did not sufficiently incorporate an insufficiency of service of process defense to preserve it for specification in later motions:

> If the Federal Rules of Civil Procedure manage to clearly and separately identify an "insufficiency of service of process" defense from a "lack of jurisdiction over the person" defense, it places no meaningful burden on defendants to require them to do the same. Allowing parties to actively engage the judicial process yet delay in raising issues of technical defects in the proper form of service of process that could have been easily cured early on makes little sense and merely wastes precious judicial time and resources.

*Id.*

By omitting the defense of insufficiency of service of process from his first responsive pleading, Brown waived it. USCIT R. 12(h). Defendant was given a 30 day extension of time to file an Answer,[7] which made no mention of service of process. He waited four months after filing his Answer to file his Motion to Quash Service. By that point Brown had lost the opportunity to raise a new USCIT R. 12(b) defense.

**B**

### Defendant Was Served In Accordance With The Hague Service Convention

Although Brown waived his defense of insufficient service of process, his arguments also fail on the merits.

Brown asserts that he was not served with legal process in accordance with The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service Convention" or "Convention"), *reprinted in* 28 U.S.C.A. Fed. R.Civ.P. 4, at 210–229 (1992). Motion to Dismiss at 5–7. While service did not comply with the method of service emphasized by Defendant, Motion at 6–7, it did comply with Articles 10(b) and 10(c), two alternate methods of service prescribed by the Convention.

Defendant also contends that the return of service filed with the Court is not acceptable evidence of service of the Summons and Complaint. Motion to Dismiss at 7–8. To the contrary, the proof of service and amended proof of service do, in accordance with USCIT R. 4(*l*), sufficiently demonstrate that Brown was personally served.

**1**

### Service Complied With Articles 10(b) and 10(c) of the Hague Service Convention

■ The Hague Service Convention is an international treaty to which the United States and Canada are signatories. The scope of the Convention is set forth in its first article: it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Convention Art. 1. The Supreme Court has held this

---

7. Court's Order dated July 8, 1997.

language mandatory and that "the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).[8]

It was necessary, in this civil case, to transmit the Summons and Complaint for service abroad because Plaintiff is the United States of America and Defendant is a resident of Ontario, Canada. *See* Compl. at ¶ 4. Thus, Plaintiff was required to make service pursuant to the Hague Service Convention.

The principle mechanism for service of process under the Convention is set forth in Articles 2 through 7. Each signatory country is required to establish a central authority to receive requests from other countries for service of judicial documents. Convention Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method that the sender requests, provided that the method is compatible with local law. *Id.* at Art. 5. The central authority then provides the sender with a certificate of service that conforms to a specified model. *Id.* at Art. 6.

In its accession to the Convention, Canada lists the Ministry of the Attorney General for Ontario as the central authority in Ontario designated to handle transmission and execution of requests for service. Canada, Notification in Conformity with Article 31, Paragraph c, of the Convention, at Declaration (A)(1), *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4 at 123–125 (Supp.1997) ("Canadian Accession Notification"). The Government concedes that it did not transmit Defendant's Summons and Complaint through this authority. *See* Plaintiff's Response at 8 n.7. Instead, it transmitted the documents through Canadian Customs. *Id.* at 13. Thus, Brown's contention that "the government failed to comply with the requirements

of Article 5 of the Hague Service Convention" is correct. Motion to Dismiss at 7.

However, "[a] state also may consent to methods of service within its boundaries other than a request to its central authority." *Schlunk*, 486 U.S. at 699, 108 S.Ct. 2104. The Hague Service Convention prescribes several other methods of achieving service of process: through diplomatic or consular agents of the sending State (Art. 8); through consular channels to authorities within a contracting State who are authorized by that State to effect service (Art. 9); through the judicial officers, officials, or other competent persons of the State of destination (Art. 10); pursuant to any other agreement between the States involved (Art. 11); or pursuant to the internal law of the receiving State (Art. 19).

Service of process in this case conformed to two of the alternate methods of service found in Article 10 of the Convention. Article 10(b) provides that, if the State of destination does not object, the Convention "shall not interfere with ... the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Article 10(c) says that, if the receiving state does not object, the Convention shall not interfere with "the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." In its accession to the Convention, Canada expressly notes that it "has not declared to object to" either of these methods of service. *See* Canadian Accession Notification, Declaration III.

The issue of who qualifies as a "competent person" under Articles 10(b) and 10(c) of the Convention is one of first impression in this Court. Commentators have noted that "[t]here is uncertainty as to the identity of the 'competent persons' who can be request-

---

**8.** The Convention was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. *Schlunk*, 486 U.S. at 698, 108 S.Ct. 2104 (citations omitted). It was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign

jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. *Id.* The Convention entered into force for the United States on February 10, 1969, 20 U.S.T. 361, and for Canada on May 1, 1989, 28 U.S.C.A. Fed.R.Civ.P. 4, at 124 (Supp.1997).

ed to make service abroad and as to the law for determining competency...." Gary B. Born & David Westin, *Int'l Civil Litig. in United States Courts*, 141 (1989). It is unclear "whether the authority of the 'competent persons' who may undertake to serve process in the state of destination is to be determined by the law of the state of origin, or by the law of the state of destination." Bruno A. Ristau, *Int'l Judicial Assistance Civil and Commercial, Volume 1* § 4–3–5 (Int'l Law Institute, 1995 Revision). Those who would be manifestly "competent" to effect process abroad under American law may not be so under the law of other countries. *Id.*[9]

Articles 10(b) and 10(c) have been the focus of litigation in only a few cases. In no case does the court provide a reasoned explanation of how it determined that service had been effected by and through "competent persons."[10]

The negotiating history of Articles 10(b) and 10(c) sheds little light on the intention of the draftsmen, although it does note:

**M. Amram** (Etats–Unis) est préoccupé par la question de savoir ce que les auteurs de l'avant-projet ont entendu par: *autres personnes comp étents.*

**Le Rapporteur** apprend à M. Amram que ce membre de phrase a été ajouté pour répondre à la demande du Royaume–Uni d'inclure les notifications faites par l'intermédiaire des *solicitors.*

**M. Amram** (Etats–Unis) conclut que, dès lors, le sens de cette phrase pourrait être

différent selon les lois de chaque Etat, ce à quoi cependant il ne fait pas objection." *Actes et Documents de la Dixième Session,* Conférence de la Haye de Droit International Privé, at 238 (Oct. 7–28, 1964).

Canada does not indicate in its accession to the Convention who it considers "competent" to transmit, receive and serve process papers under Articles 10(b) and 10(c). Canada does not explicitly object to or qualify the language of either provision. *See* Canadian Accession Notification, Declaration III.

Canada does head its declaration acceding to Articles 10(b) and 10(c): "Service through judicial officers, notably 'huissiers' [bailiffs or deputy sheriffs], etc., of the requested State." *Id.* If headings are part of the official text, this could be read to indicate that Canada intended transmission of documents through judicial officers to be the only alternative to transmission through a central authority.

Canadian Government practice, however, demonstrates a contrary intention. The Canadian customs officers who served process on Defendant are servants of the Government of Canada. If the Canadian Government believed its third Declaration limited service of process solely to judicial officers, it had only to speak to prohibit its Customs agents from serving process. By standing mute, the Canadian Government not only approved such activities, but affirmed their validity.

The rest of Canada's third declaration further supports an expansive interpretation of who is "competent" to transmit, receive and serve process in Canada under Articles 10(b)

---

**9.** Ristau notes:

"Under American law, private persons may (either by special appointment, see Rule 4(c), Fed.R.Civ.P., or under general statutory authority) serve process. Unlike most civil law countries, the U.S. has no general requirement that process be served by officials. It has been commonplace for American attorneys to request foreign attorneys, or individuals who happen to travel to a foreign country, to serve process on persons in those countries by personal delivery. Such foreign attorneys or private persons are manifestly 'competent' under American law to effect service abroad. It is, however, unlikely that they are 'competent' to effect valid service under the laws of most civil law jurisdictions."

*Supra,* at § 4–3–5.

**10.** In *Tamari v. Bache & Co.,* 431 F.Supp. 1226 (N.D.Ill.1977), *aff'd,* 565 F.2d 1194 (7th Cir. 1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978), a "court appointed process server" personally served the defendant in Paris. The court, without explanation, held that such service "would appear to fall within the provisions of Article 10(b)" of the Hague Service Convention. *Id.* at 1229. In *Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd.,* 106 F.R.D. 595, (E.D.Mo.1985), the Court had previously entered an order authorizing an English solicitor to serve a resident of the United Kingdom. The court, without explanation, held that this method of service complied with Articles 10(b) and 10(c). *Id.* at 596.

and 10(c). Canada inserts an "etc." after "judicial officers" in its heading to Declaration III, impliedly including in its accession to Articles 10(b) and 10(c) the "officials," "other competent persons," and "person[s] interested in a judicial proceeding" mentioned in those provisions. *Id.*

It is not surprising that Canada does not impose strictures on the methods of service provided for in Articles 10(b) and 10(c) of the Convention: Canada's internal laws are themselves flexible about who is authorized to affect service of process. The laws of Ontario governing service of process do not proscribe government officials or even private persons from effecting service of process.[11] In Ontario, personal service is an accepted method of service.[12] Throughout Canada, personal service is the preferred method of service. *See Delaire v. Delaire* [1996] 147 Sask.R. 161, at ¶ 46, *quoting* J.G. Castel in *Canadian Conflict of Laws*, 2nd Ed (Toronto, Butterworths 1986) ("In all the common law provinces and territories, personal service of process is the foundation of jurisdiction in actions in personam.")[13]

In this Court, "any person who is not a party and who is at least 18 years of age" is competent to effect service of a summons and complaint. USCIT R. 4(c).

Transmission of the Summons and Complaint from the U.S. Customs Service to Canada Customs clearly conformed to Article 10(b) of the Convention. "Officials" and "competent persons" were involved in both the United States and Canada. Jeremiah J. Sullivan sent a letter to Investigator Dana Andrews, Acting Manager of Canada Customs Investigations, Hamilton Region, requesting that Investigator Andrews' Office serve a copy of the Summons and Complaint in this case on Brown. Plaintiff's Exhibit A. Special Agent Sullivan is an "official" pursuant to Article 10(b): according to the Government, he is "the head of the Office of Investigations for the U.S. Customs Service in Buffalo, New York, and is responsible for all investigations conducted by that office." Plaintiff's Response at 12.

Special Agent Sullivan transmitted Defendant's Summons and Complaint to an "official" and "competent person" of the State of destination: Investigator Andrews was "Acting Manager" of a regional Canada Customs Investigations office. Plaintiff's Exhibit A.

Andrews then transmitted the documents to another "competent person": Canada Customs Investigator Mark Leonard. Plaintiff's Exhibit B. In Leonard's Declaration of Service dated January 13, 1998, he affirms that he served the Summons on Defendant pursuant to Agent Sullivan's written request. *Id.*[14] Leonard also affirms that he was over eighteen years old when he effected service. *Id.* Thus, service of Defendant was "directly effected" by and through officials and "competent persons," pursuant to Article 10(b).

Service also complied with Article 10(c). 10(c) provides that "any person interested in a judicial proceeding" may effect service. There is no case authority that sheds light on who qualifies as a "person interested in a judicial proceeding," (and the negotiating history of the Convention is not helpful). Plaintiff argues that "[c]onsidering that the fraud at issue in this case was investigated by Sullivan's office, Sullivan clearly also is an 'interested person' in this litigation." Plaintiff's Response at 12–13. Sullivan is the head of the Customs office that discovered and

---

**11.** See Rule 16, Rules of Civil Procedure, *reprinted in* Gary D. Watson & Michael McGowan, *Ontario Civil Practice 1998*, 358–368.

**12.** Rule 16.01(1) of the Rules of Civil Procedure in Ontario provides that "[a]n originating process shall be served personally as provided in rule 16.02 or, ... by an alternative to personal service as provided in rule 16.03." *Id.* at 359. Rule 16.02(1) states that where a document is to be served personally on an individual, the service shall be made "by leaving a copy of the document with the individual." *Id.* at 360. Defendant was served in accordance with this Rule.

**13.** An even less direct form of service is sufficient if the court is satisfied that the defendant has received actual notice of the proceedings. *See, e.g., McGillis v. Hirtle* [1992] 128 A.R. 83, at ¶ 19 ("If the court is satisfied that the action has come to the attention of the defendant the object of service has been satisfied").

**14.** Defendant does not dispute that service took place in the manner described by Leonard in his declarations of service.

investigated Defendant's alleged violations of United States law; as such, he qualifies as an "interested person" who is eligible to effect service pursuant to Article 10(c) of the Hague Service Convention.

### 2

### The Declarations of Service Are Acceptable Evidence of the Delivery of the Summons and Complaint to Defendant

As further support for his Motion to Quash Service, Defendant argues that the Proof of Service of the Summons and Complaint is "defective in several respects." Motion to Dismiss at 7. He specifically alleges that it was not executed by a person designated by Declaration (A)(3) of Canada's accession to the Hague Convention, does not specify the place of service, was not written in compliance with the requirements of 28 U.S.C. § 1746 for a declaration in lieu of affidavit executed abroad, and was not filed with the court and provided to Defendant's counsel in a timely manner. *Id.* at 7–8. Defendant cites no authority to support any of these contentions; none are valid arguments for quashing service of process in this case.

■ Defendant argues in his motion that the Proof of Service was not executed by an authorized person, as required by Article 6 of the Hague Service Convention and Declaration (A)(3) of Canada's Accession Notification.[15] As discussed above, service in this case was effected pursuant to Articles 10(b) and 10(c) of the Hague Service Convention.

Articles 10(b) and 10(c) are separate methods of transmission from the "Central Authority" mechanism that is governed by Article 6; thus, Plaintiff was not required to follow the procedures of Article 6 of the Convention and Declaration (A)(3) of Canada's Accession Notification.

■ The Government's Proof of Service did comply with the rules of this Court. Proof of service of the Summons and Complaint is governed by USCIT R. 4(*l*). That Rule states that if service is effected under Rule 4(f)(1), as it was in this case,[16] proof of service must be made "pursuant to the applicable treaty or convention." *Id.* Articles 10(b) and 10(c) have no special enumerated procedures for establishing proof of service. In instances in which service is effected abroad and the applicable international agreement allows other means of service, Rule 4(*l*) states that proof of service shall "include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court."

The proofs of service that Plaintiff filed with the Court are satisfactory evidence of delivery to Defendant. On June 18, 1997, Leonard, a "Canada Customs Investigator," executed a "Declaration of Service." Defendant's Exhibit 1.[17] In the Declaration, Leonard states that he personally handed a copy of the Summons and Complaint in this action to Brown on June 18, 1997. *Id.* In an amended Declaration of Service executed on January 13, 1998, Leonard adds that he served Brown in the city of Burlington, On-

---

**15.** Article 6 of the Convention provides that "[t]he Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention."

"The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service."

"The applicant may require that a certificate not completed by a Central Authority or a judicial authority shall be countersigned by one of these authorities."

"The certificate shall be forwarded directly to the applicant."

**16.** USCIT R. 4(f) states, in relevant part, that service "may be affected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

**17.** USCIT R. 4(*l*) states that "[i]f service is made by a person other than a United States marshal or deputy United States marshal, the person shall make affidavit thereof." 28 U.S.C. § 1746 allows an unsworn declaration made under penalty of perjury to replace an affidavit. *See* discussion *infra,* pp. 1059–60.

tario; he was thirty-five years old at the time of service; under the laws of Canada and Ontario he is a person competent to personally serve process upon individuals; and Defendant probably knew Leonard as a Canada Customs Investigator because Leonard had met with Defendant on several previous occasions in an official capacity. Plaintiff's Exhibit B.

Defendant does not dispute that he was served by Leonard in the manner described in these detailed proofs of service. In the federal system, "some courts require a showing of 'strong and convincing evidence' to overcome a facially valid return of service generated by a private process server ... while others simply have suggested that a rebuttable presumption of correctness might apply." *Corcoran v. Shoney's Colonial, Inc.,* 39 Fed.R.Serv.3d 345, 348 (W.D.Va.1997) (citing *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking,* 126 F.R.D. 48, 52 (N.D.Ill.1989); *FROF, Inc. v. Harris,* 695 F.Supp. 827, 829 (E.D.Pa.1988)). Defendant fails to meet his burden under either standard. The detailed and specific declarations of service filed by Plaintiff are satisfactory evidence of service of process for this Court.

Leonard's first declaration of service does not, as Defendant points out, indicate where Defendant was served. Motion to Dismiss at 7. However, Rule 4(*l*) does not, as Plaintiff notes, require proof of service to specify the place of service. Plaintiff's Response at 17. Defendant does not cite any authority to support his contention that such specificity is required.

In any event, on January 13, 1998, Leonard executed a second declaration which indicates that Brown was served in the city of Burlington, Ontario. Plaintiff's Exhibit B. Because Rule 4(*l*) is liberal about allowing proof of service to be amended, and Defendant does not contend he was prejudiced by the form of the original proof of service, even if the first declaration was insufficient, the Court will admit the second declaration and its specification of the place of service. Rule 4(*l*) ("The court may allow proof of service to be amended."). *See Molokai Chamber of Commerce v. Kukui (Molokai), Inc.,* 891 F.Supp. 1389, 1394 n. 2 (D.Hawai'i 1995) (accepting corrected declarations after finding that the corrected declarations did not prejudice the defendants).[18]

Defendant asserts that Leonard's first declaration was invalid because, while it stated it was being made under penalty of perjury, it did not contain the phrase "under the laws of the United States." Motion to Dismiss at 7–8. Defendant ignores the fact that 28 U.S.C. § 1746 explicitly states that declarations executed outside the United States must follow *"substantially"* the following form: " 'I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct ....' " (emphasis added). Leonard's first declaration of service did substantially follow that form; it stated that "I [Leonard] declare under penalty of perjury that the foregoing is true and correct." Defendant's Exhibit 1. As Plaintiff points out, the opening statement of the declaration also states that it is being made "[p]ursuant to the provisions of 28 U.S.C. § 1746," thus alerting the reader that the statements contained therein are being made under the laws of the United States. *Id.;* Plaintiff's Response at 17. Leonard's first declaration of service, therefore, conforms to the requirements of the statute.

Only two relevant cases have been cited to this Court, in both of which similar language was found to conform with 28 U.S.C. § 1746. *See Matter of Muscatell,* 106 B.R. 307, 309 (Bkrtcy.M.D.Fla.1989) ("as long as the unsworn declaration includes the phrase, "penalty of perjury," and states the document is true, the verification requirements of 28 U.S.C. § 1746 will be satisfied"); *Reliance Ins. Co. v. United States,* 23 Cl.Ct. 108, 113 n. 2 (1991) (declaration stating that it was made "pursuant to" section 1746 and that it

---

**18.** Defendant also cursorily mentions that the proof of service "does not indicate in any way that Leonard was authorized or qualified to serve legal process under the laws of the Commonwealth of Canada or the Province of Ontario." Motion to Dismiss at 4. This information is not a required part of the proof of service under US-CIT R. 4. In any event, the amended service does affirm that "[u]nder the laws of Canada and Ontario, [Leonard is] a person competent to personally serve such process upon an individual." Plaintiff's Exhibit B.

was "true and correct to the best of my knowledge, information and belief" held sufficient, even though it did not include "under penalty of perjury").

■ Finally, Defendant complains that Plaintiff "belatedly" filed its Proof of Service with the Court and provided Defendant's counsel with a copy. Motion to Dismiss at 7. Defendant points out that almost ten months elapsed between when the Complaint was filed and when Defendant's counsel received a copy of the Proof of Service. Motion to Dismiss at 7. However, Defendant does not indicate when, if ever, he requested a copy of the Proof of Service; nor does he cite any authority for the proposition that in this Court, ten months is an unreasonable period of time to wait to file a proof of service. In fact, Defendant's argument is at odds with the plain language of USCIT R. 4(*l* ), which provides that "[f]ailure to make proof of service does not affect the validity of the service." Accordingly, even if no proof of service had been filed (which is not the case), this Court would not be deprived of jurisdiction over Brown. *See, e.g., Nelle v. Ciotti,* 151 F.R.D. 568, 570 (E.D.Pa.1993); *Fox v. Regie Nationale des Usines Renault,* 103 F.R.D. 453, 455 (W.D.Tenn.1984).

As there is no proof that Defendant suffered prejudice by receiving a copy of the Proof of Service when he did, because Defendant is not arguing that he was not in fact served by Mr. Leonard on June 18, 1997, as the declaration states, and because there are no defects in the declaration, the Court will not quash service simply because the proof of service was not filed immediately after the Complaint was filed.

### C

### This Court May Exercise Personal Jurisdiction Over Defendant

■ Defendant argues that this Court cannot exercise jurisdiction over him for two reasons: because the Complaint "does not allege that Brown was ever within the United States" and because "the complaint does not show that any of the vaguely alleged acts of Brown in Canada are sufficient to subject him to the personal jurisdiction of this Court,

consistent with the requirements of due process." Motion to Dismiss at 9. His arguments must fail, however, since the acts that Brown is alleged to have committed in Canada are sufficient to constitute "minimum contacts" with the United States, and the exercise of personal jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted).

■ An individual's contacts with a forum state are not to be judged according to his or her employer's activities there; however, status as an employee "does not somehow insulate" that person from jurisdiction. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Instead, a nonresident employee's contacts with the forum state "must be assessed individually." *Id.* The Court must evaluate those individual contacts using a two-part test: did the defendant have "minimum contacts" with the forum state, and does the exercise of jurisdiction over the defendant comport with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

The "minimum contacts" standard of *International Shoe* was elaborated by the Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958): minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State...." The "purposeful availment" requirement is met when the defendant's contacts with the forum State proximately result from actions that create a "substantial connection" with the forum State. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

The majority in *Asahi Metal Industry Co., v. Superior Court of California,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), emphasized that "[t]he 'substantial connection' between the defendant and the forum

State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." (citations omitted). The Court held that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* Examples of conduct directed toward the market in a forum State include designing the product for the market in that state, advertising there, establishing channels for providing regular advice to customers there, or marketing the product through a distributor who has agreed to serve as the sales agent there. *Id.*

To determine whether the exercise of jurisdiction in a particular case "offends traditional notions of fair play and substantial justice," the Court must consider such factors as the burden imposed on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. *Id.* at 113.

Brown argues that he does not have minimum contacts with the United States sufficient to subject him to the personal jurisdiction of this Court. He first contends that Plaintiff's Complaint "fails to establish any factual basis for attributing the acts of the corporate defendant Streamflo to the individual Defendant Brown." Motion to Dismiss at 9.

This Court has held in other actions involving violations of 19 U.S.C. § 1592 that "[a] corporate officer may be liable for false statements made by a corporation if the officer knowingly participated in the deception or failed to correct the false statements upon learning of them." *KAB Trade Co.,* 1997 WL 155397 at *3; *see also United States v. Appendagez,* 5 CIT 74, 80, 560 F.Supp. 50, 54 (1983) (corporate officers may become liable for the illegal actions of others in the corporation if they knowingly participate in such actions).[19]

The Complaint alleges that Brown not only knowingly participated in acts constituting violations of § 1592, but also ordered and

directed his employees to take those actions. Paragraph 12 alleges that Brown and co-Defendant David Islip ordered employees to remove "Made in Taiwan" country of origin markings from unmodified merchandise which had been imported into Canada from Taiwan, and to replace the markings with "Made in Canada" or "Canada" markings. The same paragraph alleges that Brown and Islip ordered employees to remove all country of origin markings from merchandise after it entered the United States, and that they ordered employees to lie about the true origin of the merchandise if questioned by U.S. Customs. Nowhere in this paragraph is Streamflo, the corporate entity, mentioned; Brown is accused of acting on an individual basis. The same is true of paragraph 19, which accuses Brown and Islip of ordering employees to falsely describe the composition of merchandise on customs entries and documents.

Under *Gould,* 935 F.2d at 1274, the Government has alleged facts sufficient to support its claim that Defendant committed fraudulent, grossly negligent, or negligent violations of 19 U.S.C. § 1592.

Brown also argues that the acts he is alleged to have committed are not sufficient to subject him to the personal jurisdiction of this Court. He emphasizes that all of the alleged acts took place in Canada. Motion to Dismiss at 9. However, as Plaintiff properly indicates, Defendant "need not have been physically present in the United States or performed these actions within the United States in order to fall within the jurisdictional purview of this Court." Plaintiff's Response at 27. As long as Defendant purposefully directed his actions toward the forum state, it does not matter where those actions were taken.

The Complaint accuses Defendant of purposefully directing actions toward the United States. Brown was General Manager of a company that introduced into the commerce of the United States multiple lots of merchandise consisting of strainers, pump con-

---

**19.** There is no proof in the record of the corporate nature of Streamflo. The Complaint states that Streamflo "is, and at all times relevant to

this complaint was, a Canadian corporation...." Compl. at ¶ 5.

nectors and check valves. Compl. at ¶ 4, ¶ 9. He wrote to the United States Customs Service requesting a ruling on which country should be indicated as the "country of origin." Plaintiff's Exhibit E. Brown, on behalf of Streamflo, also submitted drawback claims to Revenue Canada for merchandise shipped to the United States. Plaintiff's Exhibit G. These documents show that Brown knew the merchandise at issue was being imported into the United States, and that he was directly involved in the importation process.

The Complaint also alleges that Defendant knowingly and intentionally ordered his employees to mislabel and misidentify goods that were being exported into the United States. The contacts alleged with the United States were not "random," "fortuitous," or "attenuated": such acts intentionally pollute the United States stream of commerce. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.[20]

■ The exercise of jurisdiction also comports with "traditional notions of fair play and substantial justice." The United States has a great interest in enforcing its customs fraud laws against foreign individuals who are involved in the direct importation of products into its stream of commerce. It is not unreasonable for an individual who sends products into the United States and who deals with U.S. Customs on a regular basis to expect to defend in the United States a suit involving alleged violations of United States customs laws. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. Brown did not even address the

issue of reasonableness in his motion, let alone carry the burden of establishing that defending a case in this Court would be substantially inconvenient. The exercise of personal jurisdiction over Defendant is reasonable and appropriate in this case.

### D

### The Government Alleged Fraud with Sufficient Particularity

■ The Complaint alleges that Brown fraudulently submitted false statements and documents to Customs in violation of 19 U.S.C. § 1592(a). *See* Compl. ¶¶ 9–27; 83–86. According to USCIT R. 9(b), all averments of fraud of must state with "particularity" the "circumstances constituting fraud or mistake." Brown argues that the allegations made in the Government's Complaint are general and conclusory, and that, therefore, the Complaint does not allege fraud with sufficient particularity under USCIT R. 9(b). Defendant's Motion to Dismiss at 10–12.

■ The purposes of Rule 9(b) are to ensure that "a defendant is afforded fair notice of the nature of Plaintiff's claim and the grounds upon which it is based,' and 'that allegations of fraud will not be advanced lightly or without some factual basis.'" *United States v. Priscilla Modes, Inc.*, 9 CIT 598, 599 (1985), (*quoting Fulk v. Bagley*, 88 F.R.D. 153, 164 (M.D.N.C.1980)). The rule, however, must be read in conjunction with USCIT R. 8, which dictates that each averment of a pleading of fraud be "simple, concise and direct." 2 *Moore's Federal Practice* § 9.03, at 9–19 and 9–28 (3d ed.1998). Thus, while Rule 9(b) "assures that a defendant will be alerted to the particular transactions in question and be able to mount an effective and meaningful defense," *United States v.*

---

**20.** Defendant mistakenly bases his arguments almost exclusively on the decision in *Asahi* that a foreign party's awareness that its products will enter the stream of commerce of the United States is not alone sufficient to establish personal jurisdiction. Defendant's Motion to Dismiss at 9 and Defendant's Reply Memorandum of Law in Support of Defendant Brown's Motion ("Defendant's Reply") at 8 (citing *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026). As Plaintiff points out, Brown's case differs significantly from that of the defendant in *Asahi*. *See* Plaintiff's Response at 26. In

*Asahi*, the defendant was a Japanese manufacturer that sold tire valve assemblies to a Taiwanese manufacturer who incorporated the assemblies into tire tubes which it then sold around the world. 480 U.S. at 106, 107 S.Ct. 1026. Brown, on the other hand, is accused of participating in the direct exportation into the United States of goods which he personally caused to be mislabeled and misidentified. His individual actions, alleged by Plaintiff, do constitute the "minimum contacts" needed to allow this Court to exercise personal jurisdiction over him.

*F.A.G. Bearings Corp.,* 7 CIT 8, 9 (1984), it does not require the pleading of detailed evidentiary matter. *Jac Natori Co.,* 17 CIT at 350, 821 F.Supp. at 1517.

 The "circumstances" that must be pleaded with particularity are more than the technical elements of fraud. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 608–12 (2d ed.1990). A fraud pleading must include informational elements of "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). Most courts have required the claimant to allege at a minimum the identity of the person who made the fraudulent statement; the time, place, and content of the misrepresentation; the resulting injury; and the method by which the misrepresentation was communicated. 2 *Moore's Federal Practice* § 9.03, at 9–18 n.12 (3d ed.1998).

In this Court, plaintiffs were held to have alleged fraud with sufficient particularity under USCIT R. 9(b) when they set forth in their complaints the kinds of informational elements mentioned above. In *United States v. F.A.G. Bearings Corp.,* 8 CIT 201, 206–07, 615 F.Supp. 562, 566 (1984), the Court held that USCIT R. 9(b) was satisfied by a complaint that specified the "time, place, and contents" of the alleged false representations, details which "fairly apprise defendant of the charges against it so that an answer may be prepared." [21]

In this case, the Complaint states the informational "circumstances" constituting fraud. It establishes the "time, place, and contents" of each of Defendant's alleged misrepresentations. Paragraph 11 accuses Defendant of knowingly placing, or causing others to place, false country of origin markings on merchandise entering the United States through the port of Buffalo from Canada from September 11, 1987, through August 27, 1992, by means of 390 entries identified in Plaintiff's Exhibit A. This paragraph lists all of the required, "particular" elements of alleged fraud: the "who" involved is Defendant; the "where" is the port of Buffalo; the "what" is causing to be placed or placing false markings on merchandise; and the "when" is the dates and entries listed.

Plaintiff provides further details about this instance of fraud. The Complaint specifies that Brown would: (1) order employees to remove "Made in Taiwan" markings from unmodified merchandise and replace them with "Made in Canada" or "Canada" markings; (2) order employees to remove all country of origin markings after the merchandise entered the United States; and (3) order employees to claim, if ever questioned by Customs, that they knew nothing about the country of origin of the merchandise, or that its country of origin was Canada. Compl. at ¶ 12. This level of specificity goes well beyond the general "time, place, and contents" pleading requirement. Plaintiff has certainly pleaded "with sufficient particularity to enable the defendant to respond" to this allegation of fraud. *Jac Natori Co.,* 17 CIT at 351, 821 F.Supp. at 1517.

The rest of the Complaint provides the same level of detail. Paragraph 15 accuses Defendant of knowingly filing or causing others to file false documents with Customs at the port of Buffalo, from October 15, 1987, through August 27, 1992. Those documents, Plaintiff claims, falsely describe the merchandise introduced into the United States (by means of specific entries identified in Plaintiff's Exhibit B) as made of cast iron and as having been made in Canada. Compl. at ¶¶ 15–17. Once again, the "who," "what," "where," and "when" of these alleged misrepresentations are all set forth. The Complaint does not merely " 'parrot[ ] ... statutory language without necessary facts ....,' " as Defendant maintains in his Motion to Dismiss at 12, (*quoting Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986)). Rather, the Complaint directs Defendant to specific dates, entries,

---

**21.** This standard has guided the Court of International Trade decisions that have subsequently addressed this issue. *See Jac Natori Co.,* 17 CIT at 351, 821 F.Supp. at 1517; *United States v.* *Obron Atlantic Corp.,* 18 CIT 771, 777–78, 862 F.Supp. 378, 383–84 (1994); *KAB Trade Co.,* 1997 WL 155397 at *5.

and representations—"necessary facts" to which Defendant is free to respond.[22]

Brown also argues that because the Complaint lumps together his acts with those of other defendants, it violates Rule 9(b). Motion to Dismiss at 12. While the Complaint does group Brown together with other defendants and accuses them of identical acts, it does not violate Rule 9; the fact remains that the Complaint does, as the Rule requires, accuse Brown of participating in particular fraudulent acts, at particular times and in particular circumstances.

Finally, Brown claims that the Complaint "lacks any allegation of the factual basis which gives rise to a 'strong inference' of fraudulent intent." Motion to Dismiss at 12, (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)). Although Rule 9(b) states that intent "may be averred generally," courts have required plaintiffs to provide a strong inference of fraudulent intent. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663–64 (2d Cir.1997). However, the facts alleged by Plaintiff in this case allege a fraudulent intent: the Complaint alleges Brown ordered the merchandise to be mismarked, he told employees to lie to Customs, and false documents were filed, all in the pursuit of reduced duty rates. *See* Compl. at ¶ 12, ¶¶ 15–19.[23] There have been, at this stage of the case, more than enough specific allegations of fraud adduced to survive a motion to dismiss. Accordingly, that basis of Brown's Motion must be denied.

**22.** Brown's case is easily distinguished from *United States v. Chow*, 17 CIT 1372, 841 F.Supp. 1286 (1993), the case he claims contains allegations "almost identical" to those in this case. Defendant's Motion to Dismiss at 11. In *Chow*, the Court ruled that while the Complaint described in detail the fraudulent acts of other parties, it did not particularly set forth circumstances constituting the defendant's individual participation in fraud. The times, places, or content of Chow's participation in any fraudulent acts were not specified: "[t]here is a lack of particularity in the complaint concerning not ·only how [defendant] aided and abetted the alleged fraud, but what it was he did to aid and abet the alleged fraud." *Chow*, 17 CIT at 1377, 841 F.Supp. at 1290. Brown's case significantly differs: as is discussed above, the Complaint against him spells out in detail his alleged involvement in fraudulent acts.

## E

### Defendant Received Due Process at the Administrative Level

Brown argues that the Complaint should be dismissed because he was given seven, rather than 30 days, to respond to the prepenalty notice sent to him by Customs. Motion to Dismiss at 13–14. While it is true he was not given the amount of time to respond required under Customs guidelines, we retain jurisdiction because Defendant was afforded sufficient opportunity to be heard at the administrative level.

### 1

### Defendant Did Not Receive the Amount of Prepenalty Notice Required Under Customs Guidelines

■ Section 1592, subsection (b)(1), of Title 19 of the United States Code dictates that when Customs has reasonable cause to believe that there has been a violation of 1592(a), it shall issue to the person concerned a written notice of its intention to issue a claim for a monetary penalty. Customs guidelines state that a person who receives such a prepenalty notice shall have 30 days from the date of mailing of the notice to make a written and an oral presentation. 19 C.F.R. § 162.78(a). However, "if less than 1 year remains before the statute of limitations may be asserted as a defense," the named person may be required to respond within "a shorter reasonable period of time, but not less than 7 days." *Id.*

**23.** In the case cited by Defendant, the plaintiff believed that the bank handling her stock sale had made a "corrupt bargain" with three favored customers. *Wexner*, 902 F.2d at 173. However, the plaintiff was unable to set forth with particularity the facts of this alleged bargain: "[c]onspicuously absent" from her complaint were "any allegations as to who leaked Wexner's plans, or when and to whom the information was leaked." *Id.* at 172. That case is markedly different from this case: here, Plaintiff's Complaint does provide "who," "when," and "why" information about the fraudulent acts alleged. Thus, by this standard as well as all others proffered by Defendant, the Government's Complaint did plead fraud with sufficient particularity.

The statute of limitation for cases brought under 19 U.S.C. § 1592 are set forth in section 1621 of the same title. When the limitation period begins to run depends on the level of culpability alleged: for fraud, a five year period is measured from the date of the discovery of the fraud; for allegations of negligence or gross negligence, a five year limitations period begins on the date the alleged violation was committed. That difference in how limitations periods are calculated was at issue in two notable cases cited by Defendant.

In *Chow* and *United States v. Stanley Works,* 17 CIT 1378, 849 F.Supp. 46 (1993), related cases that share similar facts, this Court dismissed actions based partly on the fact that Customs had not given the defendants the time to respond to prepenalty notices that was appropriate for their alleged levels of culpability. The defendants in each case were accused only of fraudulent violations of 19 U.S.C. § 1592, and, on the day that prepenalty notices were mailed to them, two years and five months remained until expiration of the five-year statutory periods of limitation. *Chow,* 17 CIT at 1375, 841 F.Supp. at 1289; *Stanley Works,* 17 CIT at 1381, 849 F.Supp. at 49. However, Customs gave the defendants only seven days to respond to the notices. *Chow,* 17 CIT at 1375, 841 F.Supp. at 1289; *Stanley Works,* 17 CIT at 1381, 849 F.Supp. at 49.

The Court held in each case that such truncated response periods had denied the defendants a reasonable opportunity to be heard, and that pursuant to its guidelines, Customs should have provided thirty-day response periods. *Stanley Works,* 17 CIT at 1381–82, 849 F.Supp. at 49–50, *Chow,* 17 CIT at 1376, 841 F.Supp. at 1289–90. For instance, the Court in *Chow* emphasized that only fraud had been alleged throughout the case: "[b]ecause plaintiff did not allege in its complaint, prepenalty notice or penalty notice a violation arising out of gross negligence or negligence, the statute of limitations is not properly measured from 'the date the alleged violation was committed.'" *Chow,* 17 CIT at 1375, 841 F.Supp. at 1288 (quoting 19 U.S.C. § 1621).

Similarly, only fraud was alleged in the prepenalty notice sent to Defendant. Defendant's Exhibit 2. The Complaint indicates that the Customs discovered Defendant's alleged fraud on or about October 30, 1992, and a prepenalty notice was sent to Defendant on March 15, 1993. Compl. at ¶ 23; Defendant's Exhibit 2. Thus, there were more than four years left before the expiration of the limitation period at the time when the notice was sent to Brown. However, Brown, like the defendants in *Chow* and *Stanley Works,* was given only seven days to respond to that notice. These facts suggest that this defendant, too, did not receive the length of time to respond to his prepenalty notice that is required under Customs guidelines.

Plaintiff argues that there is a significant difference between this case and *Chow* and *Stanley Works:* in this case, the prepenalty notice included the tentative determination that Brown's culpability level was fraud, but the Complaint finally accused him of gross negligence and negligence as well as fraud. *See* Defendant's Exhibit 2; Plaintiff's Response at 34. The Government alleged in its Complaint that the first section 1592 violation took place on September 11, 1987. Compl. at Exhibit A. The prepenalty notice was mailed to Brown on March 15, 1993. At that time less than 1 year did remain before the statute of limitations may have been asserted as a defense to allegations of grossly negligent or negligent Section 1592 violations. As Plaintiff points out, Defendant now raises just such a defense. *See* Plaintiff's Response at 34; Motion to Dismiss at 14–16. These facts demonstrate, Plaintiff argues, that it was necessary to give Brown only seven days to respond to the prepenalty notice back in 1993.

Plaintiff's arguments fail for several reasons. First, claims of gross negligence and negligence are nowhere mentioned in the prepenalty notice. If the Government was not accusing Brown of either, then it had no more right to shorten the response time in his case than it has in any other fraud case. The Court in *Chow* and *Stanley Works* held that the law did not allow Customs to pursue a supposed in-house "policy" of "calculat[ing] the statute of limitations from the date of the

violation (as opposed to the date of discovery of fraud) as a conservative measure.'" *Chow,* 17 CIT at 1375 n. 1, 841 F.Supp. at 1288 n. 1; *Stanley Works,* 17 CIT at 1381 n. 2, 849 F.Supp. at 49 n. 2. The Government in this case is arguing that it should be allowed to employ such "conservative measures": to cover itself in case it decides later to charge a defendant with alternative violations, and need an additional few weeks within the statute of limitations to be able to do so. *Chow* and *Stanley Works* condemn such a practice.[24]

In Brown's case as well as in *Chow* and *Stanley Works,* the statute of limitations was not due to expire for any of the violations alleged in the prepenalty notices. Brown's notice alleged only fraud, and there were four years left before the statute of limitations may have been asserted as a defense to that charge. The purpose of having procedures specially designed for the prepenalty notice period is defeated if later developments in a case can justify how those procedures were carried out. Plaintiff's interpretation of 19 C.F.R. § 162.78(a) does not comport with its plain meaning or its purpose, and it is not supported by precedent.

**24.** Plaintiff cites *United States v. Ziegler Bolt and Parts Co.,* 19 CIT 13, 21 (1995), as support for the proposition that because the Complaint alleged grossly negligent and negligent violations which were nearly time-barred at the time the prepenalty notice was sent, the abbreviated period given to Brown to respond to the fraud claims in that notice were ultimately justified. Plaintiff's Response at 40, 41. While the Government claims that the relevant facts in that case are similar to the one at bar, the two are significantly different. In *Ziegler Bolt,* Customs alleged negligence or gross negligence as to all but one entry in the prepenalty notice, and for some of the entries the statute of limitations could have been asserted as a defense within one year. *Id.* at 14 n. 1, 21. The defendant argued that it should have had 30 days to respond to allegations involving the entries that were not due to expire. *Id.* at 20–21. The Court held that because the statute of limitations could have been asserted as a defense to *some* entries, Customs was justified in accelerating the time period within which defendant could respond to the prepenalty notice as a whole. *Id.* at 21.

**25.** Even if the Court determined that the shortened response time did deprive Defendant of due process, this Court would retain jurisdiction of

### Defendant Did Receive Due Process at the Administrative Level

The Court is not required to grant Defendant's Motion to Dismiss this case simply because Plaintiff did not technically comply with its prepenalty notice guidelines. *United States v. Rotek, Inc.,* No. 97–08–01311, 1998 WL 314028, at *5 (CIT 1998) ("the court must focus not on a rigid application of [an] agency's regulations, but rather, on whether the defendant was afforded sufficient opportunity to be heard. . . .") Because Defendant was ultimately given sufficient opportunity to be heard at the administrative level, Plaintiff's violation of its Customs regulations is not fatal to its case.[25]

In numerous cases, this Court has focused less on whether administrative guidelines were strictly followed during the prepenalty phase of an action brought under 19 U.S.C. § 1592, and more on whether the defendant was afforded "substantive and procedural due process" throughout the case as a whole. For instance, in *Ziegler Bolt,* 19 CIT at 21, after giving the defendant less than the required amount of time to respond to a pre-

Defendant's case: "failure to provide adequate notice or opportunity to participate at the administrative level is generally not perceived as a jurisdictional prerequisite to an enforcement action brought by the agency." *Jac Natori Co.,* 17 CIT at 350, 821 F.Supp. at 1516–17 (citing *United States v. Priority Products, Inc.,* 793 F.2d 296, 300 (Fed.Cir.1986)); *United States v. Maxi Switch, Inc.,* No. 97–08–01426, 1998 WL 466101 at *5 (CIT 1998). As the Court recently noted in *Rotek:*

Because the present action arises under 19 U.S.C. § 1592 and is not specified in 28 U.S.C. § 2637(a)–(c), this court has discretion whether to waive the exhaustion requirement. *See* 28 U.S.C. § 2637(d); *United States v. Priority Products, Inc.,* 793 F.2d 296, 300 (Fed.Cir. 1986) ("Exhaustion of administrative remedies is not strictly speaking a jurisdictional requirement and hence the court may waive that requirement and reach the merits of the complaint.") Thus, the court must focus not on a rigid application of the agency's regulations, but rather, on whether the defendant was afforded sufficient opportunity to be heard so as to justify the court's retention of jurisdiction without further exhaustion of the administrative remedies.

1998 WL 314028 at *5.

penalty notice, Customs gave the defendant an extension of time to submit a petition protesting the proposed penalty and held a full hearing at which the defendant gave an oral presentation. Under those facts, the Court found that the defendant did have an opportunity to be heard. *Id. See also KAB Trade Co.*, 1997 WL 155397 at *4 ("due process claim[s] must rest on the question of whether [defendants] had an adequate opportunity to be heard at the administrative level"); *United States v. Modes, Inc.*, 13 CIT 780, 786, 723 F.Supp. 811, 816 (1989) (opportunity for defendant to make oral presentation, in combination with Customs' written decision in support of its conclusions, provided ample opportunity to achieve administrative remedies).

In *Obron*, 18 CIT 771, 862 F.Supp. 378 (1994), the defendant argued that its case was analogous to that of the defendants in *Chow* and *Stanley Works* because, like the defendants in those cases, it (Obron) was erroneously given less than 30 days to respond to a prepenalty notice. Obron's situation, however, was significantly different. The defendants in *Chow* and *Stanley Works* were "forced to respond to their respective prepenalty and penalty notices in rapid fire succession," and in both cases Customs "failed to exhaust its administrative remedies and failed to provide the respective defendants with a fair opportunity to be heard." *Id.* at 776, 862 F.Supp. at 382–83. In addition, Customs "further abused the administrative process" in *Stanley Works* "by failing to take action for twenty-one months," after which it again sent the defendant truncated prepenalty and penalty notices. *Id.*, 862 F.Supp. at 383.

In contrast, though given a "truncated" response period in its prepenalty and penalty notices, "Obron was able ultimately to argue its case over a six-month period." *Id.*, 862 F.Supp. at 382. Obron was given a month after responding to the prepenalty notice to prepare and present an oral argument and submit an appraisal/worksheet for consideration. *Id.* Customs also gave Obron a month after responding to the penalty notice to make an oral presentation, and permitted it to provide Customs with a supplemental submission in support of its petition for mitigation and remission. *Id.* "The number of opportunities which Obron had to present its case and the lengthy time period within which these presentations were made" led the Court to conclude that "Obron was afforded its due process rights at the administrative level." *Id.* As such, Customs' failure to rigidly apply its regulations and to provide a thirty-day response period in Obron's prepenalty and penalty notices amounted to no more than "harmless error." *Id.*

Brown's case is more akin to *Obron*, *KAB Trade Co.*, and *Modes* than to *Chow* and *Stanley Works*. While the defendant in *Chow* "complained bitterly that he was not given adequate time to prepare," Brown responded early to his prepenalty notice,[26] and did not mention time constraints in his response. *Chow*, 17 CIT at 1376, 841 F.Supp. at 1289; Plaintiff's Exhibit I. The defendants in *Chow* and *Stanley Works* were allowed only 7 days to respond to their penalty notices; Brown does not complain about his penalty notice, and the record does not indicate how long he was given to respond to that notice. Customs apparently responded in detail to Brown's petition seeking mitigation of the penalty assessed in the penalty notice.[27]

Brown was then apparently given the opportunity to file a supplemental petition pur-

---

**26.** The prepenalty notice, dated March 15, 1993, stated that Defendant's response "must be made within seven (7) days from the date of mailing of this pre-penalty notice...." Plaintiff's Exhibit H. Defendant's response is dated March 19, 1993. Plaintiff's Exhibit I.

**27.** Defendant's petition seeking mitigation of the proposed penalty is not included in the record; nor is Customs' response to Brown. Plaintiff's Exhibit J, a letter from the International Trade Compliance Division of the U.S. Customs Service to the District Director of Customs in Buffalo, New York, makes reference to Defendant's petition and addresses in detail the allegations it purportedly makes. In the letter the writer orders the Buffalo office to quickly provide Brown's counsel with a copy of its decision; while Plaintiff's Response suggests that such was provided to Brown, no documentation contained in the record supports that claim. *See* Plaintiff's Response at 37.

suant to 19 C.F.R. § 171.33.[28] While Brown asked for and received three extensions of time, the supplemental petition was never submitted.[29] Defendant was not prejudiced by the shortened response time he was given in his prepenalty notice: he was given sufficient opportunity to be heard, and he did not exhaust the administrative remedies available to him. Under the circumstances, the abbreviated response time given to Defendant to respond to his prepenalty notice nearly five years ago was a harmless procedural error which does not require this Court to dismiss this case.

F

**The Statute of Limitations Bars the Government's Complaint as to Claims Which Accrued More than Five Years Prior to Brown's First Waiver of Limitations**

Defendant argues that the statute of limitations bars the Government's claims that are based upon grossly negligent or negligent acts which occurred more than five years prior to August 10, 1993. Defendant's Motion to Dismiss at 14–16. Defendant bears only the initial burden of production to show that the Government's claims are time-barred in connection with extinguished causes of action; the burden then shifts to the Government to show that the extinguished claims are actionable by virtue of some exception to the statute of limitations. *United States v. Hitachi America, Ltd.*, 964 F.Supp. 344, 388 (CIT 1997). In this case, Defendant meets his burden by demonstrating that he expressly excluded from his first waiver of the statute of limitations any claims that were already barred at the time the waivers became effective. *See* Defendant's Exhibit 3. The Government does not carry its burden of persuasion. Its argument is inval-

id that the limitation period was tolled while Defendant was in Canada.

19 U.S.C. § 1621 imposes a five year limitation period on claims involving violations of 19 U.S.C. § 1592 which arise out of gross negligence or negligence. *See* discussion *infra* p. 1064. The limitation period begins running on the date of the alleged violation. 19 U.S.C. § 1621.

The first grossly negligent or negligent violation that Plaintiff alleges Defendant committed took place on September 11, 1987. *See* Compl. at ¶ 9; Exhibit A. Almost six years later, Defendant executed a waiver of the statute of limitations which the Government accepted for a two-year period beginning on August 10, 1993. *See* Defendant's Exhibit 3. A comparable waiver was subsequently executed and accepted through August 10, 1997. *Id.* Both waivers state that "it is expressly understood that this waiver does not apply to any entries for which the statute of limitations had already run." *Id.* The plain language of the statute, Complaint, and waiver indicate that Plaintiff's gross negligence and negligence claims which are based upon acts which occurred between September 9, 1987, and August 9, 1988, (52 entries) are time-barred. *See* schedules attached as Exhibits to the Complaint.

Plaintiff argues that the statute of limitations does not apply in this case. It cites the exception to the limitation period found in 19 U.S.C. § 1621(2): "the time of the absence from the United States of the person subject to the penalty or forfeiture ... shall not be reckoned within the 5–year period of limitation." Brown was in Canada when the alleged violations of Section 1592 took place, and he has been there since. Thus, the Government argues, Brown has been "absent" from the United States, and the limita-

28. Plaintiff's Response contends Defendant was informed of its right to file a supplemental petition in its copy of the Customs decision referred to in footnote 27 above. *See* Plaintiff's Response at 37.

29. Plaintiff's Exhibit K is one such request, dated August 9, 1993; Plaintiff's Exhibit L is a letter from a Fines, Penalties and Forfeitures Officer granting that request, dated August 13, 1993. Plaintiff's Exhibit M is a letter from the same

officer to Brown's attorney dated October 6, 1993, responding to and granting what was apparently another request for an extension of time; it gave Defendant until March 10, 1995, or 30 days following the resolution of criminal proceedings (whichever came first) to submit a supplemental petition. Plaintiff's Exhibit N makes passing reference to another apparent request for time which was granted and which extended the deadline to April 14, 1995.

tions period has been tolled. Plaintiff's Response at 42–49.

The Government argues that the language of the statute is unambiguous on its face, and that the obvious definition of "absence from the United States" is "'being away from the United States,' *i.e.,* not being physically present within the borders of the United States." *Id.* at 46.

This interpretation of "absence" does not comport with the word's plain meaning and common usage. *Black's Law Dictionary* states that "absence" is "[t]he state of being absent, removed, or **away from one's domicile, or usual place of residence.** Not present at particular time." *Black's Law Dictionary* 8 (6th Ed.1990) (emphasis added). In *Webster's Third New International Dictionary,* "absence" is: "1: the state of being absent or **missing** from a place or from companionship: **failure to be present** ... 2: failure to be present (as in an accustomed place) or where one is needed, wanted, or **normally expected** (frequent [absence]s from a job)...." *Webster's Third New International Dictionary* 6 (1993) (emphasis added). These definitions for the most part define "absence" as the state of being away from a place where one usually is, or is expected to be. Brown was not "missing" from the United States because he was not normally found there or expected to be there. To use an everyday analogy, one is not "absent" from a class in which one was never enrolled.

The Government's proposed definition of "absence from the United States" conforms better to the phrase "outside the United States." In *Black's Law Dictionary,* "outside" is defined as "[t]o the exterior of; without; outward from." *Black's, supra,* at 1102. Brown was indeed "without" the United States for the entire period in question.

The distinction between the words "outside" and "absence" is illustrated in other provisions of the United States Code. Section 6531 of Title 26 provides that the limitations period for certain tax evasion offenses is tolled for the period during which the defendant is "outside the United States or is a fugitive from justice...." "Outside" simply means "without." Later in the provision, a reference is made to "the time during which a person committing an offense is absent from the district wherein the same is committed...." The word "absent" refers to no longer being in a place where one once was. 18 U.S.C. § 2441, a provision dealing with war crimes, refers explicitly to one who, "whether inside or outside the United States, commits a war crime...." "Outside" here clearly indicates that the person involved need never have set foot in the United States.

Courts have used the words "absence" and "outside" in a similar fashion. In *Matter of Assarsson,* 687 F.2d 1157 (8th Cir.1982), the Court used the word "absence" to refer to one who had left his "usual place of abode." *Assarsson* at 1162 n.9. That court cites another case in which the court was concerned with determining the reason for the accused's absence **from his native country.** *Id.,* (citing *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir.1976)) (emphasis added). In *United States v. Myerson,* 368 F.2d 393, 395 (2d Cir.1966), the Court characterizes as "absence from the country" time that the defendant spent in other countries, away from his home in the United States. Plaintiff does not cite a single case in which the word "absent" is used in the context of a foreign resident.

The weight of the evidence favors an interpretation of "absence" which does not include foreign residents like Defendant. Plaintiff certainly did not act as though it believed that the statute of limitations was tolled: it sought and received two waivers of the statute of limitations from Defendant, and it now argues that Defendant's prepenalty notice period needed to be shortened because the statute of limitations "may be asserted as a defense" in this case. Customs undoubtedly deals on a regular basis with foreign defendants accused of customs violations, yet Plaintiff cannot point to a single illustrative instance in which the statute of limitations for a Section 1592 offense was tolled because a foreign defendant was deemed "absent" from the country.

Finally, Plaintiff argues that its interpretation of "absence" is better from a policy

standpoint. The statute of limitations for foreign residents, it says, should be tolled because,

> The ability to investigate those who are outside the United States is hampered by the fact that the Government must often rely upon the cooperation of another sovereign state before a potential defendant may be interviewed or before any of his relevant documents may be examined. Absent such cooperation, it may be impossible to conduct a thorough investigation of an entity that lies beyond our borders, in stark contrast to the Government's ability to engage the full panoply of investigative resources and powers that are available within the United States pursuant to United States law.

Plaintiff's Response at 44. Plaintiff cannot, however, contend that the foreign government involved in this case was not cooperative: Plaintiff itself cites, in another context, the Mutual Assistance Agreement, in which the United States and Canada agree that the customs administrations of the two countries are to "assist each other in the prevention, investigation, and repression of offenses." Plaintiff's Exhibit D, Agreement Between the United States of America and Canada Regarding Mutual Assistance and Co-operation Between Their Customs Administrations, June 20, 1984, U.S.-Can., T.I.A.S. 11253, Art.2, ¶ 1(a). Plaintiff cannot argue that it had trouble serving Defendant in this case: it has known all along where Brown was and how to commence a suit against him. Indeed, Plaintiff argues that the methods of service available at its disposal were simple and varied. Plaintiff's Response at 6–16.

Congress revised 19 U.S.C. § 1621 in 1978 to create a new, more lenient statute of limitations for violations of section 1592 arising out of gross negligence or negligence. *See* H.R. Conf. Rep. No. 95–1517 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2249. While the limitations period for fraud still commenced on the date of discovery of the fraud, suits brought to enforce Section 1592 penalties arising out of gross negligence or negli-

gence now have to be brought within five years after the violation occurred. *Id.* The clear intent of Congress was to benefit unintentional violators of customs laws, whose mistakes had occurred over five years ago and had escaped attention. The plain language of 19 U.S.C. § 1621 indicates that Brown falls under that change in the law. He is not a fugitive who fled the United States to conceal himself and avoid suit-he is a foreign resident who lives outside the United States. It is nonsensical to toll Brown's limitations period because of his "absence" from the United States: he never lived here.

# V

## CONCLUSION

Brown's Motion to dismiss all negligence and gross negligence claims arising more than five years before August 10, 1993, is granted. It is denied in all other respects.

### ORDER AND JUDGMENT

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Defendant Brown's Motion to Quash Service of Process and Dismiss for Lack of Personal Jurisdiction, Failure to Plead Fraud with Particularity, and Failure to State Claims under 19 U.S.C. § 1592 is denied; and it is further

ORDERED, ADJUDGED and DECREED that Defendant Brown's Motion to dismiss all negligence and gross negligence claims arising more than five years before August 10, 1993, is granted.