**Slip Op. 04-86**

**United States Court of International Trade**

ALUMINERIE BECANCOUR, INC.,
c/o REYNOLDS METALS COMPANY,

                    Plaintiff,

          v.

UNITED STATES,

                    Defendant.

Before: Pogue, Judge

Court No. 00-00445

[Defendant's motion to dismiss denied.]

                         Decided: July 14, 2004

LeBoeuf, Lamb, Greene & MacRae, LLP (Gary P. Connelly, Melvin S. Schwechter) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Acting Attorney-in-Charge, International Trade Field Office, James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Attorney, Of Counsel, Office of Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, for Defendant.


                         **OPINION**

   **Pogue, Judge:** Plaintiff Aluminerie Becancour, Inc. ("Aluminerie" or "Plaintiff") seeks to invoke this Court's jurisdiction pursuant to subsection (a) of 28 U.S.C. § 1581 (2000) to challenge the denial of its administrative protest filed

pursuant to 19 U.S.C. § 1514 (2000).[1]  That protest sought to challenge Defendant's imposition of certain Merchandise Processing Fees ("MPF") on Plaintiff's imports.

Defendant United States Bureau of Customs and Border Protection[2] ("Customs" or "Defendant") moves for dismissal claiming lack of subject matter jurisdiction because Plaintiff failed to timely file its protest.  The Court also inquires into whether the instant action was timely filed with the Court.

Because Plaintiff's protest was timely filed, and because Plaintiff's case was timely filed, Defendant's motion to dismiss is denied.[3]

----

[1]Because Plaintiff filed its summons in 2000, Summons of Aluminerie at 2, the Court will refer to the 2000 versions of the statutes or regulations.  The Court acknowledges, however, that because the events related to this action took place over an extended period of time, various versions of each of the statutes and regulations involved may apply.  Accordingly, the Court has reviewed the versions from 1994 until the present and found that no amendments affecting the outcome of this case have occurred. The Court notes that subsection (c) of 28 U.S.C. § 1491, see infra note 27, was redesignated from subsection (b) to subsection (c) in 1996.  See Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (codified as amended at 28 U.S.C. § 1491 (2000)).

[2]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

[3]In Aluminerie Becancour, Inc. v. United States, slip. op. 04-40 (CIT Apr. 23, 2004), the Court granted Defendant's motion. However, pursuant to USCIT R. 59(a) (stating that a "rehearing may be granted . . . in an action finally determined"), the

## I. Background

Plaintiff's administrative protest has a ten-year history, a review of which is necessary background for the motion at issue here. On December 15, 1992, Aluminerie made a voluntary disclosure to Customs under 19 U.S.C. § 1592(c)(4), admitting that it had failed to pay MPF on unwrought aluminum products imported into the United States between 1990 and the date of disclosure. Def.'s Mem. Supp. Mot. Dismiss at 1-2 ("Def.'s Mot."); Pl.'s Opp'n to Mot. Dismiss at 1 ("Pl.'s Opp'n"). To perfect its voluntary disclosure, Customs requested that Aluminerie tender $88,542.87, which Aluminerie paid on October 6, 1994. See Letter from John Barry Donohue, Jr., Assoc. Gen. Counsel, Reynolds Metals Co., to William D. Dietzel, Dist. Dir., Customs, Pl.'s Ex. A at 1,[4] 4 (Oct. 6, 1994) ("October 6 Letter").[5]

---

Court, on June 8, 2004, ordered reconsideration of its April 23 opinion and now, hereby, vacates the judgment granted therein and the opinion on which it was based.

[4]Documents appended to Pl.'s Opp'n are referred to as "Pl.'s Ex." followed by the corresponding letter. The document appended to Plaintiff's motion for leave to amend its memorandum of opposition is referred to as "Pl.'s Attach." Documents appended to Plaintiff's supplemental letter brief are referred to as "Pl.'s Supp. Ex." followed by the corresponding letter.

[5]The record shows that all correspondence and documentation referred to in this decision was either addressed to or sent by Reynolds Metals Company, in its capacity as owner of Aluminerie Becancour, Inc. Reynolds Metals Company also owns Canadian Reynolds Metals Company, which is the Plaintiff in a companion case before this Court. Canadian Reynolds Metals Co. v. United States, Court No. 00-00444, slip op. _____ (CIT July 14, 2004) (pending).

Along with its payment, Aluminerie submitted a letter in which it advised Customs of its intent to appeal the MPF determination, as it considered its entries exempt from the MPF rate demanded by Customs. Id. at 1. Aluminerie argued that the unwrought aluminum products were of Canadian origin, and thus qualified for special treatment pursuant to the United States-Canada Free Trade Agreement ("USCFTA"). Letter from Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D at 4, 4-5 (Feb. 1, 1995) ("February 1 Letter").[6] Customs, on the other hand, had previously concluded that due to a non-Canadian additive, Aluminerie's entries failed to qualify for the reduced MPF rate provided by the USCFTA. Id. at 5. Aluminerie, in turn, argued that pursuant to the doctrine of de minimis non curat lex, the foreign additive in the Canadian entries should be disregarded for country of origin purposes. Id. Aluminerie informed Customs in its payment tender letter that it expected a full refund of the tender amount along with accrued interest in the event that subsequent litigation was successful. October 6 Letter, Pl.'s Ex. A at 1.

Customs responded in a letter dated November 8, 1994, stating that it had received Aluminerie's tender of MPF, but rejected all conditions imposed by Aluminerie in connection to this payment.

---

[6]Barnes, Richardson & Colburn was Plaintiff's legal representative at the time. See February 1 Letter, Pl.'s Ex. D at 4.

Letter from Charles J. Reed, Fines, Penalties & Forfeitures Officer, on behalf of William D. Dietzel, Dist. Dir., Customs, to John Barry Donohue, Reynolds Metals Co., Pl.'s Ex. B at 1 (Nov. 8, 1994) ("November 8 Letter"). Subsequently, Customs and Aluminerie concluded an escrow agreement on December 20, 1994, in which they agreed to let the decision in a designated test case[7] control whether a full refund of Aluminerie's MPF payment was appropriate. Agreement between Reynolds Metals Company and U.S. Customs Service, Pl.'s Mot. for Leave to Amend Pl.'s Opp'n, Pl.'s Attach. at 1 (Dec. 20, 1994) ("Escrow Agreement").[8] In the event that the test case decision was favorable to Aluminerie, Customs further agreed to refund the full tendered amount "together with such interest as may be required by law." Id. at 1-2.

On February 6, 1995, Aluminerie filed an administrative protest. See Letter from Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, to Dist. Dir., Customs, Pl.'s Ex. D at 1

---

[7]In subsequent amendments to the escrow agreement, concluded on October 28, 1996, and July 13, 1998, the parties identified the designated test case as Alcan Aluminum Corp. v. United States, 21 CIT 1238, 986 F. Supp. 1436 (1997), originally referred to as St. Albans Protest No. 0201-93-100281 (HQ 955367) and subsequently appealed to the Federal Circuit Court of Appeals. Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 3, 4 (Oct. 30, 1996); Letter from Charles D. Ressin, Chief, Penalties Branch, Int'l Trade Compliance Div., to Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, Pl.'s Ex. C at 5, 6 (July 13, 1998); Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999).

[8]Reynolds Metals Company concluded the agreement with Customs on behalf of Plaintiff. See Escrow Agreement, Pl.'s Attach. at 1.

(Feb. 6, 1995) ("February 6 Letter"); Protest No. 0712-95-100130, Pl.'s Ex. D at 3 (Feb. 6, 1995) ("Protest Form").[9] In its protest, Plaintiff appeared to make three objections to Customs' actions. First, Plaintiff stated that it objected to the assessment and payment of MPF. February 1 Letter, Pl.'s Ex. D at 4. Second, it protested "contingencies not anticipated in the [escrow] [a]greement[,] or unanticipated frustration" of the same. Id. at 5-6. Plaintiff then appears to have made a third objection, referring to Customs' acceptance of payment. Id. at 4. In support of this third objection, Plaintiff noted that a copy of Customs' letter dated November 8, 1994, as well as a receipt of payment made out by Customs on November 7, 1994, was enclosed with the protest.

---

[9]The "protest package" provided as Exhibit D by Plaintiff contains copies of two letters along with a copy of a completed Customs Form 19 (Protest No. 0712-95-100130); the first letter is dated February 1, 1995, and the second letter is dated February 6, 1995. See Pl.'s Ex. D. Accordingly, it appears as though Plaintiff first attempted to forward a protest to Customs on February 1, 1995, but that for reasons unclear to the Court, the protest was not filed until February 6, 1995, the date Customs received and stamped the protest form. Protest Form, Pl.'s Ex. D at 3. The implementing regulation for filing of protests confirms that a protest is considered filed on the date it is received by Customs. 19 C.F.R. § 174.12(f) ("The date on which a protest is received by the Customs officer with whom it is required to be filed shall be deemed the date on which it is filed."). Additionally, both parties agree that the protest was filed on February 6, 1995. See Def.'s Mot. at 2; Pl.'s Opp'n at 3. As the February 6 Letter merely serves as a complement to the original protest attempt on February 1, 1995, however, the Court will treat the letter dated February 1, 1995, as part of the protest filed on February 6, 1995. See February 6 Letter, Pl.'s Ex. D at 1 ("[W]e forwarded protests, dated February 1, 1995, in which [Aluminerie] protested the assessment and payment of Merchandise Processing Fee ('MPF').").

Id.; see also Collection Receipt from U.S. Bureau of Customs & Border Prot., to Aluminerie Becancour, Pl.'s Ex. A at 6 (Nov. 7, 1994) ("Receipt"). Plaintiff clarified in its protest that it did not expect Customs to act in response to its objections until final judgment was rendered in the pending test case. February 1 Letter, Pl.'s Ex. D at 6.

On January 5, 1999, the Federal Circuit Court of Appeals issued its decision in the test case, Alcan Aluminum Corp. v. United States, 165 F.3d 898 (Fed. Cir. 1999). The Alcan Aluminum Corp. Court held that the foreign additive in question was subject to the principle of de minimis non curat lex, and therefore, the entries were considered of Canadian origin. 165 F.3d at 902. The Alcan Aluminum Corp. decision became final on April 5, 1999. Pl.'s Opp'n at 4.

Because Aluminerie's entries qualified for preferential trade status under the USCFTA as a result of the favorable decision in Alcan Aluminum Corp., Customs refunded to Aluminerie the deposited MPF amount in full "[o]n or about" February 7, 2000.[10] Compl. of Aluminerie at 3.

Customs, however, failed to tender interest pursuant to the escrow agreement when it made the refund to Aluminerie. Def.'s Mot. at 2; Pl.'s Opp'n at 4. Aluminerie then sent, on February 10, 2000, a request for accelerated disposition of its protest. See

---

[10]No supporting exhibit was provided, but Defendant does not deny this statement. See Def.'s Mem. at 2.

Pl.'s Opp'n at 4-5; Letter from F. D. "Rick" Van Arnam, Jr., Barnes, Richardson, & Colburn, to Port Dir., Customs, Pl.'s Supp. Ex. A (Feb. 9, 2000); Certified Mail Receipt, Pl.'s Supp. Ex. B (Feb. 10, 2000). Following what Aluminerie considered a denial of the original protest by operation of law, it filed a summons with the Court on September 7, 2000. Summons of Aluminerie at 2. Plaintiff subsequently, on September 30, 2002, filed its complaint seeking relief. Compl. of Aluminerie at 6. The thrust of Plaintiff's complaint is that Customs failed to pay interest on the refunded MPF. Id. at 3-4. As noted above, Defendant Customs moves to dismiss for lack of subject matter jurisdiction.

## II. Standard of Review

Because Plaintiff is seeking to invoke the Court's jurisdiction, it has the burden to establish the basis for jurisdiction. See Former Employees of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT ____, ____, 273 F. Supp. 2d 1336, 1338 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). At the same time, because Defendant's motion to dismiss challenges the sufficiency of Plaintiff's pleadings (as opposed to the factual basis underlying the pleadings), the Court will accept all facts alleged in Plaintiff's pleading as true. Corrpro Cos. v. United States, slip. op. 03-59, at 4 (CIT June 4, 2003).

## III. Discussion

Defendant moves to dismiss, alleging that because Aluminerie failed to timely protest any Customs decision, subject matter jurisdiction is lacking. See Def.'s Mot at 3-4. Furthermore, even in the event that the Aluminerie timely protested a Customs decision, this Court can only exercise subject matter jurisdiction if the case was timely filed with the Court. See 28 U.S.C. § 2636(a); USCIT R. 3(a). The Court will therefore discuss each of these timing issues in turn.

### A. Plaintiff Timely Protested a Customs Decision

Plaintiff seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a), which provides for the review of the denial of a protest made under section 515 of the Tariff Act of 1930, as amended at 19 U.S.C. § 1515. Compl. of Aluminerie at 1; 28 U.S.C. § 1581(a). Subsection (a) of § 1515 authorizes Customs "to review and deny or allow a protest as long as it is filed in accordance with 19 U.S.C. § 1514. 19 U.S.C. § 1515(a). A suit attempting to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a) must therefore be based on a protest which complies with the requirements of § 1514.

Title 19 U.S.C. § 1514 governs the timing of protests. 19 U.S.C. § 1514. Section 1514 specifically provides that, where no notice of liquidation is involved, a protest must be filed no more

than ninety days after the protested decision.[11]  Both parties to this action agree that there is no notice of liquidation in this matter; therefore, it is necessary to determine whether Plaintiff's protest challenged any Customs decision made within ninety days prior to the protest's filing.  See Def.'s Mot. at 3; Pl.'s Opp'n at 5.

In its protest, Plaintiff appears to make three objections. See February 1 Letter, Pl.'s Ex. D at 4-6.  First, Plaintiff protests the assessment and payment of MPF.  Id. at 4.  The MPF tender, however, occurred on October 6, 1994, October 6 Letter, Pl.'s Ex. A at 4, while Plaintiff filed its protest on February 6, 1995.  Protest Form, Pl.'s Ex. D at 3.  Because a time period of more than ninety days elapsed between those two events, Plaintiff's protest fails to present a timely challenge to the assessment and payment of MPF.

Second, Plaintiff protests unanticipated frustration of, and

_____

[11]Title 19 U.S.C. § 1514(c)(3) provides as follows:

> A protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before--
> (A) notice of liquidation or reliquidation, or
> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

19 U.S.C. § 1514(c)(3).

contingencies not foreseen in, the escrow agreement.  February 1

Letter, Pl.'s Ex. D at 5-6.  Title 19 U.S.C. § 1514(c)(3) states,

however, that parties must file protests "within ninety days after

but not before . . . the date of the decision as to which protest

is made."  Id.  (emphasis added).  The decision the protesting

party objects to must therefore occur prior to the filing of the

protest.  As previously stated, Aluminerie filed its protest on

February 6, 1995.  Protest Form, Pl.'s Ex. D at 3.  To the extent

that Plaintiff objects to the unanticipated event of Customs'

decision to refund MPF without interest in February 2000, that

event had not yet occurred at the time the protest was filed.[12]

Accordingly, under a plain reading of 19 U.S.C. § 1514(c)(3),

Plaintiff's protective protest was untimely and invalid.  See A.N.

Deringer, Inc. v. United States, 12 CIT 969, 972, 698 F. Supp. 923,

925 (1988) (holding that a protest was invalid either because it

was filed the day before Customs denied a previous claim for relief

---

[12]Plaintiff claims that Customs made the decision not to pay
interest as early as November 8, 1994, the day it sent the
November 8 Letter.  See Pl.'s Opp'n at 6.  However, the parties
subsequently signed the escrow agreement, where Customs agreed to
refund the MPF amount and "interest as may be required by law" if
related litigation was successful.  Escrow Agreement, Pl.'s
Attach. at 1-2.  Thus, even presuming that Customs made the
decision to deprive Aluminerie of interest at such an early
stage, that decision was later vitiated by the terms of the
escrow agreement before the filing of the protest.  Moreover,
even if the escrow agreement did not vitiate Customs' original
rejection of any conditions on the payment of MPF, the language
of the protest – objecting to unanticipated frustration of the
escrow agreement – clearly refers to decisions which had not yet
been made, and not to the November 8 Letter.

or barred by the provision allowing only one protest per entry of merchandise).

Third, Plaintiff appears to object to Customs' acceptance of its MPF tender. See February 1 Letter, Pl.'s Ex. D at 4. In its protest, Plaintiff alleges that Customs accepted its payment on November 8, 1994, and specifies that the protest was filed within ninety days of that date. Id. Plaintiff's February 1 Letter further states that Plaintiff attached a copy of the November 8 Letter to the protest, as well as a copy of the receipt from Customs. Id. The receipt, however, shows that Customs received Plaintiff's MPF payment on November 7, 1994. Receipt, Pl.'s Ex. A at 6. The November 8 Letter, on the other hand, indicates that Customs acknowledged the MPF tender, and that Customs intended not to accept the tender's contingencies. November 8 Letter, Pl.'s Ex. B at 1. Consequently, the Court cannot conclude that Customs' acceptance of Plaintiff's tender took place on November 8, 1994. Rather, acceptance occurred a day prior, when Customs received payment and made out the receipt. Customs therefore, on November 7, 1994, made the decision Plaintiff attempted to protest; November 7 was ninety-one days prior to the filing of the protest in question here. However, February 5, 1995, the ninetieth day from November 7, 1994, fell on a Sunday. Under USCIT R. 6(a), when this Court computes any period of time prescribed by statute, and where the last day falls on a Saturday, Sunday or holiday, the last day

of the period shall not be included in the computation, but the allowable time period shall run to the next business day.  See USCIT R. 6(a).  Therefore, Plaintiff's protest was timely filed on February 6, 1995.[13]

### B.  The Case Was Timely Filed With the Court

The timeliness of the protest does not itself mean that jurisdiction is proper in this case.  Having found that the protest itself was timely filed, the Court turns to the question of whether the instant case was timely filed with the Court.  A case arising from the denial of a properly filed protest must be commenced within 180 days after the date of mailing of the denial of the protest, or within 180 days of denial of the protest by operation of law.  See 28 U.S.C. § 2636(a).  A case arising under 19 U.S.C. § 1581(a) is considered commenced when the summons is filed.  See USCIT R. 3(a)(1).  The summons in this case was filed on September 7, 2000.  See Summons of Aluminerie at 2.  All that remains in

---

[13]The Court's opinion here does not reach the question of whether Plaintiff's protest is susceptible of the relief desired by Plaintiff.  Defendant has argued that by failing to directly challenge the nonpayment of interest, Plaintiff has failed to make a protest that can result in the desired relief.  See Def.'s Mot at 4-5.  Plaintiff argues that Customs' failure to pay interest is in violation of 19 U.S.C. § 1505(c), Pl.'s Opp'n at 11, which in pertinent part holds, "[i]nterest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest."  19 U.S.C. § 1505(c).  This statute might allow the protest of acceptance of tender to properly result in repayment of interest.  However, in this opinion, the Court limits itself to discussion of the timeliness of Plaintiff's protest and case.

order to know whether that summons was timely, is to discover whether denial occurred, and if so, whether the filing of the case meets the requirements of 28 U.S.C. § 2636(a).

Protests may be denied either by an affirmative act or, where a request for accelerated disposition has been sent by certified mail, by operation of law. See 28 U.S.C. § 2636(a), 19 U.S.C. § 1515(b). Title 19 U.S.C. § 1515(b) provides that where a request for accelerated disposition has not been allowed or denied within thirty days of its certified mailing, it will be denied by operation of law:

> [a] request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail. . . . any time after ninety days following the filing of such protest. . . . [A] protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.

19 U.S.C. § 1515(b).[14] Aluminerie mailed by certified mail a request for accelerated disposition of its protest to Customs on

---

[14]Title 19 U.S.C. § 1515(a) states that "within two years from the date a protest was filed in accordance with section 1514 of this title, [Customs] shall review the protest and shall allow or deny such protest in whole or in part." 19 U.S.C. § 1515(a). The section does not state that protests not allowed or denied within two years are denied by operation of law. However, when read in context with 28 U.S.C. § 2636(a), it appears that section 1515(b) provides the means by which a protest may be denied by operation of law. See U.S.C. § 1515(b); see also Knickerbocker Liquors Corp. v. United States, 78 Cust. Ct. 192, 193-95, 432 F. Supp. 1347, 1349-50 (1977).

February 10, 2000.  See Certified Mail Receipt, Pl.'s Supp. Ex. B.[15]

Aluminerie's protest was denied by operation of law, then, on March

11, 2000, the thirtieth day from the mailing of the request.  That

day, however, was a Saturday, so under USCIT R. 6(a), March 13,

2000, the following Monday, is officially the day upon which the

protest was denied by operation of law.  Fewer than 180 days

elapsed between March 13, 2000 and September 7, 2000, the day the

summons was filed.  Therefore, this action was timely commenced

with this Court.

The protest upon which this case was timely filed, as was the

case itself.  Accordingly, Customs' motion to dismiss is hereby

denied.

So ordered.


                                    ___/s/Donald C. Pogue___
                                       Donald C. Pogue,
                                            Judge


Dated:    July 14, 2004
          New York, New York


---

[15]The Domestic Return Receipt provided by Aluminerie indicates
that the request for accelerated disposition of protest was
received by Customs on February 14, 2000.  See Domestic Return
Receipt, Pl.'s Supp. Ex. B (Feb. 14, 2000).

ERRATUM


Please make the following change to <u>Aluminerie Becancour, Inc. v. United States</u>, Slip Op. 04-86, July 14, 2004, Court No. 00-00445:

On page 8, the last sentence,

At the same time, because Defendant's motion to dismiss challenges the sufficiency of Plaintiff's pleadings (as opposed to the factual basis underlying the pleadings), the Court will accept all facts alleged in Plaintiff's pleading as true. <u>Corrpro Cos. v. United States</u>, slip. op. 03-59, at 4 (CIT June 4, 2003).

should be struck and replaced with the following:

At the same time, "the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" <u>United States v. Islip</u>, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting <u>Gould, Inc. v. United States</u>, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).


August 10, 2004