**Slip Op. 04-157**

**United States Court of International Trade**

| |
|---|
| ALCAN ALUMINUM CORPORATION, |
| Plaintiff, |
| v. |
| UNITED STATES, |
| Defendant. |

Before: Pogue, Judge

Court No. 01-00095

[Defendant's motion to dismiss granted.]

Decided:  December 8, 2004

Lawrence A. Salibra, II and Elisa P. Pizzino, for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Attorney in Charge, International Trade Field Office, James A. Curley, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Yelena Slepak, Of Counsel, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge:**  Plaintiff Alcan Aluminum Corporation ("Alcan") seeks to invoke the Court's jurisdiction under 28 U.S.C. §1581(a)(2000)[1] to contest the denial of its February 8, 1995

_____

[1]Because Alcan filed its summons in 2001 (Summons of Alcan at 2), the Court will refer to the 2000 versions of the statutes or regulations.  The Court acknowledges, however, that because the events related to this action took place over an extended period of time, various versions of each of the statutes and regulations involved may apply.  Accordingly, the Court has reviewed the versions from 1994 until the present and found that no amendments affecting the outcome of this case have occurred.

administrative protest.[2]   See Compl. of Alcan at paras. 1, 20.
Defendant United States Bureau of Customs and Border Protection[3]
("Customs") moves to dismiss this action for lack of subject matter
jurisdiction, alleging that Alcan failed to timely file its
protest.

---

[2]On February 10, 1995, Alcan filed a second administrative
protest.  See Compl. of Alcan at paras. 12, 13.  This second
protest is not properly before the Court for two reasons: first,
although it is discussed in the complaint, it is not mentioned in
the summons in this action. See id.; Summons of Alcan at 1.
    Second, the February 10 protest appears to cover the same
entries as the first; however, 19 U.S.C. § 1514(c)(1) permits
only a single protest for any given entry or set of entries.  See
19 U.S.C. § 1514(c)(1).  In its complaint, Alcan alleged that the
first protest covered entries made at the port of Detroit,
Michigan, while the second protest covered entries made at the
port of Ogdensburg, New York.  See Compl. of Alcan at paras. 12,
13.   However, Alcan now concedes that the two protests cover the
same entries.  See Letter from Lawrence A. Salibra, II, Senior
Counsel, Alcan Aluminum Corp., to Honorable Donald C. Pogue, Ct.
Int'l Trade, at 3 (June 18, 2004)("June 18 Letter").  Because 19
U.S.C. § 1514(c)(1) precludes the filing of two protests relating
to the same entries and the same category of merchandise, "[t]o
effectuate the Congressional intent in the one protest per entry
rule. . .only the first protest received by Customs for filing
may practically be treated as valid." Russ Togs, Inc. v. United
States, 79 Cust. Ct. 119, 122 (1977) (emphasis in original).
Therefore, the Court will not address the second protest, dated
February 10, 1995.

[3]Effective March 1, 2003, the United States Customs Service
was renamed the United States Bureau of Customs and Border
Protection.  See Homeland Security Act of 2002, Pub. L. No. 107-
296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308;
Reorganization Plan Modification for the Department of Homeland
Security, H.R. Doc. No. 108-32, at 4 (2003).

Because the Court concludes that the subject protest was not timely or properly filed, Defendant's motion to dismiss is granted.[4]

## BACKGROUND

This dispute began with Alcan's December 24, 1992, voluntary disclosure informing Customs that it did not pay the Merchandise Processing Fee ("MPF") on imports of unwrought aluminum products entered into the United States before 1993.[5] See Def.'s Mem. Supp.

_____

[4]In Alcan Aluminum Corp. v. United States, slip. op. 04-99 (CIT Aug. 9, 2004), the Court denied Defendant's motion to dismiss. However, the Court ordered the decision stayed pending briefing by the parties on the effects of U.S. Shoe Corp. v. United States, 114 F.3d 1564 (Fed. Cir. 1997) on the case, and now withdraws its August 9 decision.

[5]Facts related to Alcan's voluntary disclosure are contained in Alcan's protest to Customs. That protest consisted of several documents ("Protest Package"): a copy of Customs Form 19, as filled out by Alcan (and later marked on and stamped by Customs), a letter dated February 6, 1995, elaborating upon the reasons for the protest, and several exhibits to that letter. See Protest Package, Ex. 1 to Letter from James A. Curley, Trial Attorney, to the Hon. Donald C. Pogue, Ct. Int'l Trade (May 4, 2004) ("Def.'s Supp. Br. Letter"). In the explanatory letter which formed part of the Protest Package, Alcan stipulated that the protested entries were of unwrought aluminum products imported from Canada between January 1, 1989 and December 31, 1992. See Letter from Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, to Dist. Dir. of Customs, United States Customs Service (February 6, 1995)("February 6 Letter"), Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 2 (May 4, 2004).
The exhibits to the February 6 Letter are labeled A, B, and C. See February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at Exs. A-C. (May 4, 2004). Exhibit A is a letter from Customs to Alcan, dated October 18, 1994. See Letter from Charles J. Reed, Fines, Penalties & Forfeitures Officer, U.S. Customs Service, on behalf of William D. Dietzel, Dist. Dir., to

Mot. Dismiss at 1-2 ("Def.'s Mot."); Compl. of Alcan at para. 4.

In response to Alcan's disclosure, on October 18, 1994, Customs

requested that Alcan remit $378,496.53 to satisfy its obligation to

pay the MPF.  See October 18 Letter, Ex A. to February 6 Letter,

Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004);

Compl. of Alcan at para. 5.  Alcan paid the requested amount to

Customs on or about November 11.  See Compl. of Alcan at para. 6.

Customs accepted Alcan's tender and issued a receipt for the same

on November 15, 1994.[6]  See Receipt, Attachment to Ex. B to

February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br.

Letter (May 4, 2004).

Recognizing a dispute between them regarding payment of MPF,

on December 12, 1994, Alcan and Customs entered into an escrow

---

Peter Shea, Alcan Aluminum Ltd. ("October 18 Letter"), Ex A. to
February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br.
Letter (May 4, 2004).  Exhibit B consists of a letter from
Customs to Barnes, Richardson & Colburn, dated November 17, 1994.
See Letter from Charles J. Reed, Fines, Penalties & Forfeitures
Officer, on behalf of William D. Dietzel, Dist. Dir., United
States Customs Service, to Rufus E. Jarman, Barnes, Richardson &
Colburn (November 17, 1994)("November 17 Letter"), Ex. B. to
February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br.
Letter (May 4, 2004).  In addition, attached to the November 17
Letter is a Customs receipt memorializing acceptance of
$378,496.53 paid by Alcan.  See Collection Receipt from U.S.
Customs Service to Alcan Aluminum Corp.(November 15,
1994)("Receipt"), Attachment to Ex. B to February 6 Letter,
Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).
Finally, Exhibit C is the escrow agreement executed by Alcan and
Customs, dated December 12, 1994 ("Agreement").  Agreement, Ex.
C. to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp.
Br. Letter (May 4, 2004).

[6]See notes 12 and 14, infra.

agreement.  See Agreement, Ex. C. to February 6 Letter, Protest

Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004); Compl. Of

Alcan at para. 8.  Under that Agreement, Customs agreed to refund

the tendered MPF with "interest as may be required by law," if it

was later determined upon resolution of a designated test case that

the tendered amount was not owed.  See Agreement, Ex. C. to

February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br.

Letter (May 4, 2004) at paras. 1-2.[7]

---

[7]In an amendment to the Agreement, the parties designated
Alcan Aluminum Corp. v. United States, 21 CIT 1238, 986 F. Supp.
1436 (1997), as the test case.  See Amend. To Agreement, Ex. 1 to
Letter from Elisa P. Pizzino, Alcan Aluminum Corp. To Hon. Donald
C. Pogue, Ct. Int'l Trade (May 3, 2004) ("Pl.'s Supp. Br.
Letter").  In that case, Alcan contested the MPF imposed by
Customs on imports of unwrought aluminum that entered the United
States during 1993.  See Test Case Summons of Alcan (Court No.
94-09-00539 at 1-4 (Sept. 14, 1994) (on file with Court).
Customs imposed the MPF rate required for "goods not originating
in the territory of Canada."  See Alcan Aluminum Corp, 21 CIT at
1238-39, 996 F. Supp. at 1437-38. This rate was imposed because
Alcan's merchandise contained a small amount of a non-Canadian
additive in addition to Canadian materials.  Id.
     But for this additive, Alcan's merchandise would have been
classified as "goods originating in Canada."  Id. at 1239, 986 F.
Supp. at 1438.  Alcan argued that the additive should have been
disregarded pursuant to the doctrine of de minimis non curat
lex., and its imported merchandise classified as "goods
originating in Canada" that qualified for the reduced MPF rate
under the United States-Canada Free Trade Agreement
Implementation Act of 1988.  Id. at 1240, 986 F. Supp. at 1438-
1439.  However, the Court of International Trade affirmed
Customs' assessment of the higher rate.  Id. at 1247, 986 F. Supp.
at 1444.  Thereafter, Alcan appealed the decision of the Court of
International Trade to the Federal Circuit, which reversed the
Court of International Trade decision.  See Alcan Aluminum Corp.
v. United States, 165 F.3d 898 (Fed. Cir. 1999).

Subsequent to the Agreement, on February 8, 1995, Alcan filed an administrative protest. See Def.'s Mot. at 2; Compl. of Alcan at para. 12. Alcan protested Customs' "assessment and [Alcan's] payment. . .of $378,496.53 for Merchandise Processing Fee." February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 1 (May 4, 2004). In addition, Alcan protested the "possibility of contingencies not anticipated in the Agreement or unanticipated frustration" of the same. Id. at 3. Finally, Alcan protested "Customs' decision to accept [Alcan's] tender[]" relating to the pre-1993 entries. See id. at 1-2. Despite these objections, Alcan requested that Customs refrain from taking action on the subject protest until after resolution of the test case. See id. at 3.

Ruling in that test case, on January 5, 1999, the United States Court of Appeals for the Federal Circuit reversed the decision of the Court of International Trade, and held that the non-Canadian additive in the subject imports was subject to the principle of de minimis non curat lex, and that, therefore, the imported merchandise was of Canadian origin. See Alcan Aluminum Corp. v. United States, 165 F.3d 898, 905 (Fed. Cir. 1999). Because the parties previously agreed that the decision in this case would control the handling of the pre-1993 entries (See Agreement, Ex. C to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 1 (May 4, 2004); Amend. to Agreement,

Ex. 1 to Pl.'s Supp. Br. Letter (May 3, 2004)), in February, 2000, Customs refunded to Alcan the tendered MPF for those entries.[8]  See Def.'s Mot. at 2; Compl. of Alcan at paras. 16, 23.   However, Plaintiff claims that Customs failed to remit to Alcan the "interest as may be required by law," as outlined in the Agreement. See Agreement, Ex. C to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 1-2 (May 4, 2004).; Def.'s Mot. at 2; Compl. of Alcan at  paras. 17, 23.

In response to Customs' action, on September 11, 2000, Alcan filed a request for accelerated disposition of its February 8, 1995 protest.  See Compl. of Alcan at para. 18; Letter from F.D. "Rick" Van Arnam, Jr., Barnes, Richardson & Colburn, to Port Dir., Customs, Re: Protest Number 3801-95-100775, Date Filed: February 8, 1995 (Sept. 11, 2000) and Certified Mail Receipt for Article Sent from Alcan Aluminum Corp. to Port Dir., Customs (Sept. 11, 2000), Ex. B to June 18 Letter.   The protest was denied by Customs on September 27, 2000.  See Compl. of Alcan at para. 19; Protest Form (as marked and stamped by Customs), Protest Package, Ex. 1 Def.'s Supp. Br. Letter (May 4, 2004).  On March 23, 2001, Alcan filed its

---

[8]There is a discrepancy regarding the actual date in February, 2000, that Customs refunded the MPF.  Alcan asserts that Customs refunded the MPF on February 7, 2000.  See Compl. of Alcan at paras. 16, 23.  However, a handwritten notation made by a Customs officer on the Protest Form indicates the money was refunded on February 14, 2000.  See Protest Form, Protest Package, Ex. 1 to  Def.'s Supp. Br. Letter (May 4, 2004).  This noted discrepancy has no effect on the Court's decision regarding the Court's jurisdiction.

Summons, and thereby commenced this action to recover the interest accrued on the refunded MPF.  See Summons of Alcan at 2.  As noted above, Defendant Customs now moves to dismiss for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

Alcan seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1581(a).  Compl. of Alcan at para. 1.  Accordingly, Alcan has the burden of establishing the basis for the Court's jurisdiction.  See Juice Farms, Inc. v. United States, 68 F.3d 1344, 1345 (Fed. Cir. 1995) (citation omitted).  At the same time, "the Court assumes 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'"  United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

## DISCUSSION

Customs contends that the Court lacks subject matter jurisdiction under § 1581(a) because Alcan's protest was untimely filed.  See Def.'s Mot. at 3-4.[9]  In response, Alcan asserts that

_____

[9]Alcan argues that Customs cannot challenge the Court's jurisdiction in this action because the Court exercised jurisdiction in the test case.  See Pl.'s Stat. in Opp'n to Mot.

the Court has jurisdiction over this case under 28 U.S.C. §
1581(a), which grants the Court exclusive jurisdiction over "any
civil action commenced to contest the denial of a protest [by
Customs]. . . ."   See Compl. of Alcan at para. 1; 28 U.S.C. §
1581(a).   However, in order to invoke the Court's jurisdiction
under § 1581(a), a civil action must be based on the denial of a
valid protest filed in accordance with 19 U.S.C. § 1514.  See Koike
Aronson, Inc. v. United States, 165 F.3d 906, 908-909 (Fed. Cir.
1999).   Title 19 U.S.C. § 1514 contains, among other things, the
statutory requirements for filing a valid protest. See 19 U.S.C. §
1514.

For a protest to be valid within the meaning of Section 1514,
an importer must protest a "decision" of Customs, and the protest
must be filed within ninety days after the protested decision.  See
19 U.S.C. § 1514(c)(3).[10]  Without such a timely filed protest, the

_____

to Dismiss at 1-2 ("Pl.'s Opp'n").  Alcan argues that the instant
action was commenced to enforce the Stipulated Judgment in the
test case, and thus jurisdiction is proper because of the Court's
continuing jurisdiction and power to enforce the same.  See id.
at 3-4.  However, the Stipulated Judgment, and the test case
itself, involved entries made during 1993.  See Test Case Summons
of Alcan (Court No. 94-09-00539); Schedule A to Stip. J., Ex A.
to Pl.'s Opp'n.  This action covers pre-1993 entries.  See
Protest Form, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter;
Summons of Alcan at 1.  Therefore, because this case and the test
case cover different entries, this action is not an instrument to
enforce the Stipulated Judgment entered in the test case, and
thus the Court's jurisdiction to enforce that judgment has no
bearing procedurally on the case at bar.

[10]Under section 1514(c)(3), to be valid, a protest must be
filed "within ninety days after but not before . . . (A) a notice

Court lacks jurisdiction.   See Castelazo & Assocs. v. United States, 126 F.3d 1460, 1461 (Fed. Cir. 1997).   Accordingly, the Court will now analyze whether the subject protest conforms to the requirements outlined in Section 1514.

In its protest, Alcan essentially objected to three separate determinations.   See February 6 Letter at 1-3.   It objected to Customs' assessment and its own payment of the MPF, any "unanticipated frustration" of the Agreement, and Customs' acceptance of Alcan's tendered MPF.   Id.   The Court will discuss all three objections in turn.

First, Alcan protested Customs' assessment and its own payment of the MPF.[11]   See id. at 1.   Customs assessed the MPF pursuant to 19 C.F.R. 162.74(h) and demanded the amount of $378,496.53 as payment of the MPF.   See Compl. of Alcan at para. 5; October 18 Letter, Ex. A to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).   This demand would appear to

---

of liquidation or reliquidation, or . . . (B) the date of the decision as to which protest is made."  19 U.S.C. § 1514(c)(3). In this action, the parties agree that the subject protest does not contest specific liquidations.  See Def.'s Mot. at 3; February 6 Letter at 1.  Therefore, subsection (B) of section 1514(c)(3) is applicable here.

[11]Insofar as Alcan protests its own payment of tender, that protest is invalid. Under 19 U.S.C. § 1514(a), only "decisions of the Customs Service" may be the subject of an administrative protest. 19 U.S.C. § 1514(a).  While Customs' demand of payment and acceptance thereof may be termed "decisions" of the Customs Service, Alcan's payment of tender cannot. Alcan tendered payment on November 11, 1994.

constitute a Customs decision; Customs calculated the owed amount of MPF and actively demanded its payment.  See Compl. of Alcan at para. 6.  Customs made its demand for payment by means of a letter dated October 18, 1994.  See Compl. of Alcan at para. 5; October 18 Letter, Ex. A to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).  Alcan filed its protest on February 8, 1995, one hundred and thirteen days after Customs' October 18, 1994 demand.  See Protest form (as stamped by Customs), Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004); Compl. of Alcan at para. 12; see also Def.'s Mot. at 3.  Therefore, because Alcan's protest of Customs' assessment was not filed within ninety days following Customs' demand, the protest of Customs' assessment of the MPF was untimely.

Second, with respect to the "unanticipated frustration" objection, Alcan protested the "possibility of contingencies not anticipated in the Agreement."  February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 3 (May 4, 2004).  The protest, however, was filed on February 8, 1995.  See Protest Form (as stamped by Customs), Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004); Compl. of Alcan at para. 12.  Assuming that Customs' eventual failure to pay interest as outlined in the Agreement constitutes a "decision," the February 6, 1995 protest is simply untimely.  According to 19 U.S.C. § 1514(c)(3), "[a] protest . . . shall be filed with the Customs Service within ninety days

after <u>but not before . . . the date of the decision</u> as to which protest is made." (emphasis added).  19 U.S.C. § 1514(c)(3). Customs refunded Alcan's tender without interest in February, 2000. <u>See</u> Compl. of Alcan at paras. 16, 17.  Therefore, even if Customs' nonpayment of interest were categorized  an "unanticipated frustration" of the Agreement, Alcan filed its protest before Customs' nonpayment of interest.  Accordingly, the protest as to this determination was untimely.  <u>See</u> 19 U.S.C. § 1514(c)(3); <u>see also</u> <u>A.N. Deringer, Inc. v. United States</u>, 12 CIT 969, 972, 698 F. Supp. 923, 925 (1988)(protest was rendered invalid because it was prematurely filed one day before Customs' decision and also violated the one-protest-per-entry rule).

Third, Alcan protested "Customs' decision to accept . . . [its] tender[]. . .[of the MPF]."  February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004) at 1-2. This acceptance occurred on November 15, 1994.[12]  But the mere

---

[12]Alcan identifies November 17, 1994 as the date upon which Customs accepted its tender. <u>See</u> February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter at 1 (May 4, 2004). This date is based on a letter it received from Customs, dated November 17, 1994, which enclosed the receipt for the tender. <u>See</u> Letter from William D. Dietzel, District Dir., to Rufus E. Jarman, Barnes, Richardson & Colburn, Ex. B to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004) ("November 17 Letter").  However, the receipt is dated November 15, 1994, which indicates that Customs' acceptance of Alcan's tender occurred on November 15th rather than on November 17th. <u>See</u> Receipt, Attach. to November 17 Letter, Ex. B to February 6 Letter, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).

passive acceptance of funds does not constitute a Customs decision under United States Shoe Corp. v. United States, 114, F.3d 1564 (Fed. Cir. 1997). That case found that Customs' collection of Harbor Maintenance Tax was not protestable, as Customs merely passively accepted the taxes paid pursuant to statute. Id. at 1569. Customs was not involved in calculation of the tax; in fact, the burden of calculation and payment was entirely on the taxed party. Id. Customs' function of collection involved no independent thought process on its part. Id.

The facts here are somewhat different than those in United States Shoe Corp. Here, Customs appears to have actively demanded payment of the MPF. See October 18 Letter, Ex A. to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).[13] However, as discussed above, the protest of Customs' demand for payment was untimely filed. All that remains, then, is a protest of Customs' passive acceptance of that demanded payment.[14]

---

[13]The Court notes, however, that the amount demanded appears to have been based on calculations provided by Plaintiff to Customs. See October 18 Letter, Ex A. to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004).

[14]Another argument could be made: Customs' acceptance of the tender is not passive, and not subject to United States Shoe Corp., because acceptance of the tender was made pursuant not to the October 18 demand, but as part of an active decision to enter into the Agreement. While Customs did not sign the Agreement until December 12, 1994, Plaintiff appears to have submitted a signed copy of the Agreement along with its tender; Customs accepted the money on November 15, 1994. See Receipt, Ex. to November 17 Letter, Ex. B to February 6 Letter, Protest Package, Ex. 1 to Def.'s Supp. Br. Letter (May 4, 2004). By accepting the

Because such passive acceptance is not a "decision" under the rule stated in <u>United States Shoe Corp.</u>, the protest of Customs' acceptance of the tender fails.  The Court need not, therefore, decide the question of whether the protest was timely; as the protest objected to no actual Customs "decision," the protest is invalid under 19 U.S.C. § 1514.

**CONCLUSION**

Because the protest before the Court was invalid, as it untimely objected to Customs' demand for payment and failure to pay interest, and failed to protested a decision of Customs inasmuch as

---

money, it could be argued that Customs accepted the Agreement as well.  Indeed, in some of its submissions, Plaintiff appears to be edging towards an argument that its February 6, 1995 protest, by protesting Customs' acceptance of payment, was in fact protesting Customs' entry into the Escrow Agreement.  <u>See</u>, e.g., Pl.'s Response to Order of Court Dated August 10, 2004 at 2 (Aug. 23, 2004). Plaintiff never clearly states this proposition, however, and even to the extent that Plaintiff's protest could be read to properly object to Customs' entry into the Escrow Agreement, it is unclear to the Court that there would be any substantive merit to protesting Customs' entry into a contract that Plaintiff itself entered into freely. Properly, it is not from Customs' entry into the Agreement that Plaintiff's complaint stems; it is from Customs' alleged breaking of the Agreement. Had Plaintiff waited until that occurrence to protest, the Court would have no trouble taking jurisdiction of the case.  As it stands, however, Customs' acceptance of tender is so entwined with either the October 18 demand that it cannot count as an independent decision, or, accepting Plaintiff's rather shadowy argument that its protest of acceptance of tender is really a protest of Customs' entry into the Escrow Agreement, would lead the Court to an absurdity – certifying as timely and proper a protest that appears to present no legal claim that could result in an award of Plaintiff's claimed relief.

it protested acceptance of payment, the Court grants Defendant's

motion to dismiss, and enters judgment for Defendant.


                                   /s/Donald C. Pogue
                                  Donald C. Pogue,
                                       Judge


Dated:          December 8, 2004
                New York, New York